# 21-2563-cr

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

———

UNITED STATES OF AMERICA,

*Appellee,*

vs.

NICHOLAS TURNQUIST,

*Defendant-Appellant.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———

## SPECIAL APPENDIX

## (Pages SPA-1 to SPA-35)

———

U.S. ATTORNEY'S OFFICE – WESTERN
    DISTRICT OF NEW YORK
PAUL E. BONANNO, ESQ.
TIFFANY H. LEE, ESQ.
*Attorneys for Plaintiff-Appellee*
138 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 843-5800
Email: paul.bonanno@usdoj.gov
        tiffany.lee@usdoj.gov

SINGER LEGAL PLLC
ROBERT C. SINGER, ESQ.
*Attorneys for Defendant-Appellant Nicholas
    Turnquist*
80 East Spring Street
Williamsville, New York 14221
Telephone: (716) 222-3288
Email: rob@singerlegalpllc.com

# TABLE OF CONTENTS

Page

Order of Detention of the District Court of September 30, 2021 ........................ SPA-1

18 U.S.C. § 3142 ......................................................................................... SPA-27

U.S. Const, Amd. VIII ................................................................................. SPA-35

i

**SPA-1**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA,   *        Docket Number:
                                     1-21-CR-00015-JLS-JJM
                            *
                            *        Buffalo, New York
             v.             *        September 30, 2021
                            *        10:04 a.m.
                            *
NICHOLAS TURNQUIST,         *        ORAL ARGUMENT
                            *
             Defendant (1). *
                            *
* * * * * * * * * * * * * * *
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          JAMES P. KENNEDY, JR.,
                             UNITED STATES ATTORNEY,
                             By PAUL E. BONANNO, ESQ.,
                             Assistant United States Attorney,
                             Federal Centre,
                             138 Delaware Avenue,
                             Buffalo, New York  14202,
                             Appearing for the United States.


For the Defendant:           SINGER LEGAL, PLLC.,
                             By ROBERT C. SINGER, ESQ.,
                             80 East Spring Street,
                             Williamsville, New York  14221.


The Courtroom Deputy:        KIRSTIE L. HENRY


Court Reporter:              BONNIE S. WEBER,
                             Notary Public,
                             Robert H. Jackson Courthouse,
                             2 Niagara Square,
                             Buffalo, New York  14202,
                             Bonnie_Weber@nywd.uscourts.gov.

1                    Proceedings recorded by mechanical stenography,
2                       transcript produced by computer.

3

4                       (Proceedings commenced at 10:04 a.m.)

5

6          **THE CLERK:**  All rise.

7          The United States District Court for the Western

8    District of New York is now in session.  The Honorable John

9    Sinatra presiding.

10          United States v. Nicholas Turnquist, case number

11   21-CR-15.  This is the date set for oral argument.

12          Counsel, please state your appearances for the record.

13          **MR. BONANNO:**  Good morning, Your Honor.  Paul Bonanno,

14   for the Government.

15          **MR. SINGER:**  Good morning, Judge.  Robert Singer, on

16   behalf of Mr. Turnquist, who is present.

17          **THE COURT:**  Good morning, Counsel.  Good morning,

18   Mr. Turnquist, as well.

19          **THE DEFENDANT:**  Good morning, Your Honor.

20          **THE COURT:**  We're here today on the Government's

21   motion to revoke the magistrate judge's order of release and my

22   review is de novo.

23          Mr. Bonanno, have victims been given notice of today's

24   proceeding?

25          **MR. BONANNO:**  Yes.  They have, Your Honor.

1     **THE COURT:**  Okay.  I have studied the submissions,

2  transcripts of proceedings before Judge McCarthy and the

3  complaint, as well, and I'd like to start with a few questions

4  here.

5         Mr. Bonanno, why aren't the proposed conditions enough

6  to reasonably assure the safety of the community?

7     **MR. BONANNO:**  Your Honor, our concern here is the

8  danger this defendant poses to the community, particularly

9  children, given the charge here and given his conduct, as

10  alleged both in our indictments, as well as the indictments

11  pending in Erie County and Genesee County against the defendant.

12         The defendant here is charged with sexually abusing

13  his stepdaughter when she was a minor in his care.

14  Specifically, the allegation in our indictment is that he

15  traveled with his stepdaughter, who was 16 at the time, to

16  Pennsylvania to engage in illegal sexual activity with her

17  there, and that he brought her and two younger daughters on that

18  trip.

19         The concern here, specifically with respect to the

20  conditions that were set by Judge McCarthy, is that he allows in

21  those conditions the defendant to have contact with children,

22  with underage minors.

23         Now, the condition is that, that contact be

24  supervised, but it's the Government's position that the

25  supervision is not sufficient.

1          For example, the defendant's wife, Carly Turnquist,

2    was engaged with the defendant in the sexual abuse of the minor

3    victim in this case.

4          When she moved in with the defendant and the victim,

5    and at that point in time, was the defendant's girlfriend, she

6    engaged in sexual activity with the defendant and the victim.

7          That, in and of itself, I think, should indicate that

8    she certainly cannot be trusted to supervise the defendant's

9    contact with children.

10          There are three children.  Specifically, three

11    daughters that the defendant has with whom he can have contact.

12    One of the daughters, who is a biological daughter of the

13    defendant and is a witness against him in the Government's case,

14    Judge McCarthy said he cannot have contact with.

15          And we appreciate that, but he is allowed to have

16    supervised contact with the other three daughters.  Now, Carly

17    Turnquist not only assisted with the sexual abuse of the victim

18    in this case, but she has two pending felony charges against her

19    right now.

20          One in Wyoming County for witness intimidation for an

21    incident that occurred the day the victim testified in Wyoming

22    County.

23          But then also two weeks ago, she picked up another

24    felony charge in Lancaster.  It is a Leandra's Law violation.

25    It was a Wednesday night, September 15th.  She was driving

 1    around 7:30 p.m. in the area of Transit Road and Como Park

 2    Boulevard in Lancaster.

 3          And she got into a motor vehicle accident.  She had

 4    her two daughters, I believe eight and nine years old, in the

 5    backseat of the car.

 6          The responding Lancaster police officer determined

 7    that she was heavily intoxicated, had hit another car, and

 8    failed all the field sobriety tests.

 9          And this occurred with the daughters in the back seat.

10    And, in fact, she started to pass out in the back of the patrol

11    car.

12          So we're very concerned that if the defendant is

13    released and allowed to have contact with his daughters and

14    other children, he cannot be trusted with them, given his

15    conduct, as alleged here, and given the inability, we think,

16    certainly, of Carly Turnquist to provide any kind of adequate

17    supervision.

18          But even beyond that, just given his history, given

19    the fact that he is charged with sexually abusing his own

20    stepdaughter in his care repeatedly over years, as reflected by

21    our indictment and the other two indictments, we have grave

22    concerns about the danger he poses to the safety of the

23    community.

24          **THE COURT:**  Who has custody of the daughters now?

25          **MR. SINGER:**  Just for the purpose of clarification,

 1  Judge, there aren't daughters.  It's a daughter and son.  I just

 2  want to make sure we have our facts straight.

 3          **THE COURT:**  Okay.  Who has custody of the daughter and

 4  son right now?  There are two minors?

 5          **MR. SINGER:**  They're two minors.

 6          **THE COURT:**  Today?

 7          **MR. SINGER:**  Carly Turnquist's biological children,

 8  not his children, and she has custody of those children.

 9          **THE COURT:**  And the defendant's son and daughter

10  are -- there are two minors that fit that category, right?

11          **MR. SINGER:**  They are minors that are not in his

12  custody.  They're in the mother's custody.

13          **THE COURT:**  That's the question.  So the mother has

14  custody of the defendant's daughter and son, who are minors?

15          **MR. SINGER:**  Just for clarification, Judge, so there

16  is -- there is a daughter and son that Carly Turnquist --

17          **THE COURT:**  Yeah.

18          **MR. SINGER:**  -- is the biological mother of --

19          **THE COURT:**  Right.

20          **MR. SINGER:**  -- that he doesn't have a relationship

21  with --

22          **THE COURT:**  Right.

23          **MR. SINGER:**  -- other than just being together with --

24          **THE COURT:**  Right.  I'm not asking -- I'm not asking

25  about them.  I'm asking about the defendant's children.

Proceedings - 09/30/21                                                    7

1          **MR. SINGER:**  So with regard to his biological

2    daughters, they are in the custody of Amanda, who is his

3    ex-wife.

4          **THE COURT:**  Okay.

5          **MR. SINGER:**  Who is the mother, biologically.

6          **THE COURT:**  Were they in his custody before he was

7    arrested?

8          **MR. SINGER:**  They were, Judge.

9          **THE COURT:**  Right up until the time he was arrested?

10          **MR. SINGER:**  Correct.

11          **THE COURT:**  Mr. Bonanno, what does the Government have

12    to say about risk of flight?

13          **MR. BONANNO:**  Your Honor, we are concerned also about

14    risk of flight and I made this argument to Judge McCarthy

15    because the defendant is facing three different indictments.

16          In this indictment, he faces a mandatory minimum -- if

17    convicted, a mandatory minimum sentence of ten years,

18    potentially up to life.  And so we think that that certainly

19    would give him incentive to flee, and the fact that he's facing

20    indictments in Genesee County and Erie County.

21          So for all those reasons, we are concerned about his

22    risk of flight, but our primary -- or my primary focus this

23    morning, Your Honor, candidly, is dangerousness.

24          **THE COURT:**  Okay.

25          Mr. Singer, what do you say about all of that and how

1    does your client rebut the presumption?  Why is the release

2    appropriate here?  It's really all the same question.

3              **MR. SINGER:**  I understand, Judge.  I guess what I

4    would say is that what the Government has played out here is a

5    lot of things about Carly Turnquist, all right.

6              And I think we made that clear in the motion, that has

7    very limited relevance, if any relevance at all to any of the

8    considerations because Carly Turnquist is not sitting to my

9    left, Nicholas Turnquist is.

10             Carly Turnquist, based on the allegations and based on

11   the charges that, whether it's the Federal Government or the

12   state government has brought, engaged in a consensual sexual,

13   legal activity with the alleged victim in this case, M.K.

14             So to say that she facilitated anything that he did

15   that's charged in this indictment and alleged in the indictment

16   or any of the other indictments out there is not accurate.

17             She is not charged as an accomplice.  She is not

18   charged with engaging in this type of activity and the reason

19   why is because she didn't transport anyone over state lines.

20             She didn't assist in transporting anyone over state

21   lines and she engaged in consensual legal activity under the

22   laws of the State of New York, so I think that's the first thing

23   I would like to bring up to the Court's attention.

24             The second thing that I think is important is they

25   claim that there's this risk of danger with regard to other

1  children that are either his biological children or other

2  children that he's around.

3       Judge, there is no allegations -- no allegations

4  regarding any other child in this case that Mr. Con --

5  Mr. Turnquist has had contact with, biological, step, or

6  otherwise.

7       There is no allegations that he engaged in this type

8  of activity with any stranger victim at all.  And these people

9  were all interviewed by the CAC, by police, to determine whether

10  or not anything was going on.

11       And every single one of those people denied that

12  Mr. Turnquist did anything to them.  And they were given the

13  opportunity in a safe environment to make those allegations

14  clear, and they have never wavered from that since, Judge.

15       So I think it's a reach to say that, well, he's

16  obviously going to sexually assault other children that he has

17  contact with because that is not the case, based on the evidence

18  that was brought forth to me in the Government's own

19  disclosures.

20       The Government also basically states that, well, he

21  has a history.  The history in this case is based on the

22  allegations involved with Ms. K, and Ms. K, alone.

23       I'm not going to belabor the points, as I said in my

24  response, to the Government's appeal in this case.  But you

25  know, needless to say, we have a disagreement over the strength

1   of the allegations in this case.

2          We are never going to convince each other otherwise at

3   this point, but I don't think it's your job either to be

4   convinced otherwise about, you know, what are the validity of

5   these allegations?

6          The basis of the matter is, is that they are contested

7   and there are a lot of different motivations that we put forth.

8   There was a lot of different testimony that was given falsely

9   that was put forth, Judge, which I think raises some questions

10  as to whether or not the strength of the Government's case is

11  really there or not.

12         And if you look back beyond the allegations in this

13  case, Judge, Mr. Turnquist's history is just that of a regular

14  citizen.

15         He holds a job.  He has ties to the community.  He

16  does work.  He's worked in law enforcement, as well as first

17  responder capacities in the past.

18         There is not a single thing to indicate that he would

19  flee, based on the fact that he's never had any type of flight

20  offenses.

21         When the police came over to his house in April of

22  2020, he engaged with them.  He voluntarily went down to the

23  police station.  He sat down for a four-hour interview with them

24  and then he was arrested.  So he never ran away from them.  He

25  never tried to abscond.

1          And on top of that, as we point out in our motion, he

2    doesn't have any history of substance abuse.  He doesn't have

3    any history of any other type of behavior that would indicate

4    that he would be a risk of flight or he would be a danger to the

5    community, other than what the Government's allegations are in

6    this case.

7          And again, they are disputed.  They are just

8    allegations at this point.  None of them have been proven.  We

9    put together a bail package in front of Judge McCarthy.

10         And originally, I told the judge and asked the judge,

11   please don't pose a financial condition in this case because of

12   all the other financial conditions that are going to be imposed

13   by the other jurisdictions.

14         And Judge McCarthy, you know, stated in the first bail

15   hearing we had, you know, Mr. Singer, I'm going to dismiss, you

16   know, this request, but I'm going to allow you to bring it again

17   without prejudice.

18         And I sat down with the family and had some hard

19   conversations with them and we were able to come up with a

20   surety interest and that to -- to Judge McCarthy, along with all

21   the other conditions he put forth.

22         You know, again, the conditions that he put forth in

23   the record that the Government didn't address with you, other

24   than just the supervision aspect involving Ms. Turnquist in that

25   other case, was reporting to pretrial services, surrender your

1  passport, no new travel, restricted to the Western District of

2  New York, avoiding contact with the witnesses.  In particular,

3  no contact with Minor Two.

4        Don't possess a firearm, electronic monitoring, home

5  detention.  Don't engage in any type of obstruction of justice.

6  There's computer conditions regarding searching out child

7  pornography or adult pornography.

8        And he consented to monitoring on that.  Mental health

9  intervention and treatment, if that's something that would be

10 appropriate.

11       And the probation office, on top of that, agreed that

12 all these conditions, prior to Judge McCarthy putting them in,

13 were something that they were comfortable with supervising him.

14       So I guess, you know, what I find here interesting is

15 that the Government's coming before you and asking you to be the

16 only judge -- the only judge out of three jurisdictions that

17 have active cases right now, to remand Mr. Turnquist without

18 bail.

19       The other judges in this case have found suitable

20 conditions that he's going to appear for trial and have found

21 that -- you know, he's not this overwhelming danger.

22       And I just -- you know, again, I -- my concern in this

23 case is that I need Mr. Turnquist to help me and he can't do

24 that from a jail cell right now, where I can't even meet him by

25 anything other than a phone.

1          And I think that there are conditions that were put

2     out -- I think Judge McCarthy put forward a sober analysis of

3     this case and I think he put in conditions that would assure the

4     safety of the community and I believe that we put forth evidence

5     that rebuts that presumption and that's why Judge McCarthy ruled

6     the way he did.  I think you should rule the same, Judge.

7          **THE COURT:**  Mr. Singer, regarding whether I should be

8     the only judge to remand your client, don't I have a unique

9     indictment with unique evidence and unique corroboration here in

10    front of me that's not at issue in the State cases?

11         **MR. SINGER:**  No.  Respectfully, Judge, I don't think

12    you have everything.  The evidence that was presented before

13    Judge McCarthy, as well as before you, is the same evidence that

14    was presented before all the other judges in the case.

15         And the allegations involved in the case, while they

16    don't involve in the State cases, transportation across state

17    lines, do involve the same core crux of allegations that are

18    present in this one.

19         And what we expect to be presented in this case, which

20    is, he engaged in activity with her between the ages of 12 to 18

21    that was nonconsensual in nature, whether it was based on her

22    age or whether it was based on force.

23         So, you know, I think the unique part of this case is

24    that it's charged Federally.  That there is interstate travel,

25    that is required as part of the elements.

1          And also that, you know, there is the element of --

2     you know, engaging in a sexual relationship with someone under

3     the age of 18 is illegal in Federal Court, but is legal in State

4     Court, because the age of consent in New York is 17.

5          So I think that's the unique aspect of this case, but

6     I don't think there is unique aspects to this case.  And the

7     corroboration -- I guess, I look at, what has the Government

8     corroborated.  And I guess, what is in dispute?

9          The corroboration is -- well, there are billing

10    records that show that he traveled on such and such a date down

11    to Erie, Pennsylvania.

12         We don't dispute that, Judge.  We never disputed that,

13    Judge.  What we are disputing is the acts of sexual intercourse

14    with the alleged victim in this case at that water park.

15         And I guess, when I look at, you know, the

16    corroborating evidence on that, we have the fact that, well,

17    Ms. K said this over and over to police and she testified under

18    oath to it in some limited capacity at the Wyoming County trial.

19         You know, that's -- that's what we have on that.  And

20    then they point to the fact that we have a statement from a

21    five-year-old who says that, well, I saw my sister in bed with

22    Mr. Turnquist and he was on top of her.

23         She didn't say, I saw them having sex.  She didn't say

24    that.  And this is coming from a five-year-old in a dark room,

25    in the middle of the night.  A five-year-old, I might add, who

1   has developmental issues and delays.

2          So I don't think that's necessarily, you know, a

3   strong corroborating fact.  And it doesn't involve necessarily

4   this incident that's alleged in the indictment either.

5          And the other thing is, is that they point to what is

6   a controlled call.  And again, we've been through the briefing

7   on that multiple different times, Judge.

8          There is a difference the Government has regarding

9   what their theory is and there is a difference between what we

10  have.  Mr. Turnquist states in that Turnquist (sic), I regret

11  that it happened.

12         Not that I regret that I -- I sexually assaulted you

13  when you were 12 or I sexually assaulted you in Erie,

14  Pennsylvania, when you were 16.

15         And, again, I go back to look at those text messages

16  that you reviewed.  What does it talk about?  It talks about a

17  sexual consensual relationship between Ms. K. and Mr. Turnquist

18  that occurred when she was 17 years old, going into 18 years

19  old, inside the State of New York, not outside of it.

20         And you know, that she denied in the Wyoming County

21  trial.  She said, no, you know, I never sent those messages.

22  No, this is all rape.

23         Again, you know, that goes to the core of the

24  allegations, to the corroborations provided.  I disagree that

25  it's as strong as the Government's proffer in this case.

1              **THE COURT:**  While you're talking about the

2       corroboration topics, what do you want to say about the -- if

3       anything, about the phone call between your client and his wife

4       while he was in jail -- the jailhouse phone call?

5              **MR. SINGER:**  What I would say to that, Judge, is that

6       that was well before my appointment in this case.

7              In speaking, you know, with the family and in speaking

8       with the client, they've had dissatisfaction with some of the

9       lawyers that had been involved in this case previous to me.

10             That conversation occurred earlier on in the case and

11      Mr. Turnquist and his wife are not attorneys.  They are not

12      educated in the law and when I listen to that conversation, you

13      know, I kind of chuckled in some ways because I hear that kind

14      of conversation either in my office or I hear it on recorded

15      phone calls all the time.

16             And it's two people trying to figure out, hey, what's

17      the legal defense in this case -- who may not necessarily know

18      what they're talking about.

19             And they are trying to grasp at straws because they

20      are desperate, number one, to defeat the allegations that have

21      been leveled against them because they don't believe they are

22      true.

23             And number two, they're trying to put their heads

24      together to try to get back together because at that point, they

25      were separated, and separated for several months.  And there was

 1   no end in sight and their lawyers were not doing anything to

 2   change the analysis.

 3        **THE COURT:**  Don't all of these little pieces of

 4   corroboration, the five-year-old daughter, the two phone calls,

 5   the records, don't they all mean something for the weight of the

 6   evidence, which is a factor here?

 7        **MR. SINGER:**  They may mean something for the weight of

 8   the evidence factor, Judge.  Of course, that's something that

 9   you have to weigh.  But as we also stated in our papers, that's

10   but one factor.

11        And when it comes down to bail, you know, there is no

12   requirement that I disprove the allegations that the Government

13   is levying against my client to secure an opportunity for

14   pretrial release.

15        There is no obligation that they prove those because

16   that's one factor in the analysis.  And the other factors, when

17   you take a look at them again -- you know, what are the

18   reasonable, least-restrictive conditions that can ensure both

19   his appearance at trial and the safety of the community?

20        What are his history and characteristics that suggest

21   whether or not he is going to commit additional offenses or

22   flee?

23        All of those things, when you take a look at them in

24   balance -- you know, if the Government wins on one factor, it

25   doesn't win on all of them.

1          And, again, I go back to those factors.  Those

2    conditions are put in place by Judge McCarthy.  Those are

3    conditions that will assure those things.  His history and

4    characteristics does not suggest that those won't.

5          And that's the analysis on whether or not he should be

6    released, pending trial, because, again, he's presumed innocent

7    until proven guilty and we haven't reached that point yet.

8          **THE COURT:**  Mr. Bonanno, what about the point that the

9    defendant isn't being accused of conduct outside of Victim One?

10         **MR. BONANNO:**  Your Honor, I don't think that the

11   presumption depends on that.  I don't think that there is a need

12   for there to be other victims for this presumption to arise.

13         So I think that he's presumed dangerous, even with one

14   victim under the law, because given his conduct, as alleged,

15   with that one victim, there is reason to be concerned about how

16   he is going to treat other minors, other daughters, quite

17   frankly.

18         And I think that that presumption is what really

19   distinguishes the position that Your Honor is in from the State

20   Court judges.

21         True, they did not remand the defendant, but they

22   don't have the presumption that applies in this case, and that's

23   a big difference.

24         And I also think that there is more corroboration for

25   the Federal charge than there is in the State charges, because

1   for the Federal charge, we only need to show that he engaged in

2   this conduct with the victim when she was 17.  Under 18.  So 17,

3   16, 15 all apply.

4        And he admitted to East Aurora detectives that he had

5   sex with the victim when she was 17.  So that's an additional

6   level of corroboration that we have that they don't have in

7   State Court because of the age threshold here in Federal Court.

8        And that also the jail call that Your Honor brought up

9   does corroborate the Federal charge because he says, could you

10  please look up the age of consent in Pennsylvania, South

11  Carolina, Florida, these other states, so that -- you know, if

12  the age of consent is, Pennsylvania, 15.  Hey, then it's legal.

13       Well, that clearly suggests that he knows he had

14  sexual conduct with the victim when she was 15, 16.  So I think

15  there is a lot more before this Court than there is in the State

16  courts.

17       **THE COURT:**  Does the Government believe that there is

18  a risk of danger to Victim One still?  I know there is some

19  allegations of a threat or some threats that occurred years ago.

20       **MR. BONANNO:**  The -- yes.  The Government is very

21  concerned about the risk of danger to Victim One, given, as she

22  testified under oath in Wyoming County Court, a long history of

23  threats by this defendant against her, if she ever told on him.

24       And repeated instances of physical violence against

25  her, including punches.  Those -- that history, along with the

1   witness intimidation that is alleged to have occurred the very

2   day she testified, causes us to feel very concerned about Victim

3   One's safety.

4        **THE COURT:**  Mr. Singer, the last word.

5        **MR. SINGER:**  Yeah, Judge.  I guess, in regard to this

6   history of potential threats or threats and intimidation

7   regarding M.K., again, as we state in our motion, Mr. Turnquist

8   is not charged with witness intimidation.  He never was.

9        And it was because he didn't engage in any acts of

10  witness intimidation.  It wasn't coordinated and whatever Carly

11  Turnquist may or may not have done, is at this point -- again,

12  that's an unproven allegation.

13       And we put forward evidence to you to show that, you

14  know, there is some issues with some of the allegations.  It

15  doesn't involve him.  And so, you know, that's the important

16  part of your analysis.

17       I think the other part regarding this long history of

18  threats or abuse.  Again, you know, I do a lot of cases

19  involving Family Court sometimes and, you know, the one thing

20  that I have learned in all those cases, and your judicial

21  experience probably teaches you, as well, is that kids get

22  older, they can vote with their feet.

23       And if they feel like they are in a bad situation when

24  they start to get 16 or 17 or even 18 years old, they can leave,

25  and they do leave.

1          And I think what's very interesting in this case is

2    that Ms. K. remained with Mr. Turnquist when she had the choice

3    to go to her mother, because she didn't feel that she would be

4    in a better situation with her mother.  She felt she was in a

5    better situation with Mr. Turnquist.

6          And, you know, if these allegations are as true as the

7    Government plays out to you today, why would someone do that?

8    You know, I can -- I think the Court can probably understand why

9    a 12-year-old would do that.

10         But when someone is 18, when someone has a boyfriend

11   and then a fiancé and they have the ability to move away from

12   someone who has repeatedly abused them for all these years, that

13   the Government alleges, and they don't -- I mean, that raises a

14   lot of eyebrows to me.  A lot of questions.

15         And, you know, I think it's instructive as to why

16   these threats that have been stated by Ms. K., their validity is

17   a little suspect.

18         I think the other part, you know, that I would

19   recognize, too, Judge, is the concern of the Government in this

20   case is -- well, we're concerned that he might have access to

21   children.  He could live with his father, who doesn't have any

22   children.

23         He could live potentially with his mother, who doesn't

24   have any children, because that would be a least-restrictive

25   condition that would allow him to be released pretrial and would

1   potentially, you know, afford some assurance to the Government

2   that he wouldn't have access to children to do these things.

3          Because, again, what does the Bail Reform Act require?

4   It requires the least restrictive conditions, not the most

5   restrictive conditions.

6          As I stated in my brief, the goal here is not to

7   remove any and all risk or to absolutely guarantee appearance.

8   It's to put conditions in effect that reasonably assure that.

9   And I think that's your job today and I think that the

10  conditions put into effect by Judge McCarthy do that.

11         **THE COURT:**  I'm not going to consider any of the

12  allegations related to your client's current wife, Carly

13  Turnquist.

14         Nevertheless, I'm going to grant the Government's

15  motion to revoke Judge McCarthy's release order.

16         Under Title 18, United States Code 3142(e), I must

17  independently determine if a condition or combination of

18  conditions will reasonably assure Mr. Turnquist's appearance, as

19  required, and the safety of the community.

20         If I find that no such condition or combination of

21  conditions exists, I must order Mr. Turnquist detained, pending

22  trial.

23         I've given these arguments here today, including the

24  written submissions, a lot of consideration and I do not think

25  that release is warranted under these facts.

1          A Grand Jury indicted Mr. Turnquist on one count of

2   transporting a minor with intent to engage in criminal sexual

3   activity.

4          He's charged with an offense involving a minor victim

5   under Section 2423(a) and the rebuttable presumption in

6   18 United States Code 3142(e)(3)(E) applies.

7          I further find that Mr. Turnquist has not introduced

8   sufficient evidence to rebut that presumption, that no condition

9   or a combination of condition will reasonably assure the safety

10  of the community, if he were released pending trial.

11         I've considered all of the factors in 18

12  U.S.C. 3142(g), including all subsections.  Specifically, the

13  nature and circumstances of the offenses or the offense --

14  excuse me -- the weight of the evidence, Mr. Turnquist's history

15  and characteristics, and the danger to the community.

16         The offense is -- obviously, the alleged offense is

17  obviously a serious one, it carries a minimum of ten years of

18  incarceration with a maximum term of incarceration of life and

19  it qualifies as a crime of violence involving a minor.

20         I have relied on the corroboration that I mentioned in

21  my questioning, including from Minor Two and the phone call from

22  the Wyoming County jail and the controlled phone call with

23  Victim One, as well as the corroborating records regarding the

24  Splash Lagoon stay in December of 2014.

25         I have considered, as well, the -- the threats related

1    to Victim One.  Even though they are dated, I have considered

2    them, nonetheless.  And I've considered the risk of harm to

3    other minors, including the potential access to other minors in

4    my decision.

5         My analysis of these factors is based on my

6    consideration of the parties' arguments and written submissions,

7    the Government's proffer, the transcripts of the detention

8    hearings before Judge McCarthy on September 9 and September 17,

9    the pretrial services report, dated September 2, 2021, and the

10   indictment, the criminal complaint signed by Judge McCarthy and

11   the affidavit of Randall Garver, Special Agent of the FBI, in

12   support of the complaints.

13        I find by clear and convincing evidence that

14   Mr. Turnquist's release would pose a danger to the safety of

15   others in the community and that no condition or combination of

16   conditions will assure the safety of others or the community if

17   Mr. Turnquist were released, pending trial.

18        I base that conclusion on all the facts and factors

19   just discussed.  Because I find that the Government established

20   Mr. Turnquist's danger to the community by clear and convincing

21   evidence, I need not decide whether his release poses a risk of

22   flight.

23        The transcript of my oral ruling here today shall

24   constitute my written findings and decision on the motion.

25   There will be a text order, as well.

1          Counsel, do either of you having anything further?

2          **MR. BONANNO:**  No, Your Honor.  Thank you.

3          **MR. SINGER:**  No, Judge.

4          **THE COURT:**  Okay.

5          Mr. Turnquist is remanded to the custody of the

6   marshals.  Have a good day.

7          **MR. BONANNO:**  Thank you, Judge.

8

9          (Proceedings concluded at 10:34 a.m.)

10

11                        *   *   *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2    In accordance with 28, U.S.C., 753(b), I certify that these

3   original notes are a true and correct record of proceedings in

4    the United States District Court for the Western District of

5       New York before the Honorable John L. Sinatra, Jr.

6

7

8

9

10   *s/ Bonnie S. Weber*          October 8, 2021
       Signature                Date

11

12  BONNIE S. WEBER

13  Official Court Reporter
    United States District Court

14  Western District of New York

15

16

17

18

19

20

21

22

23

24

25

## 18 USCS § 3142

Current through Public Law 117-52, approved October 31, 2021.

*United States Code Service > TITLE 18. CRIMES AND CRIMINAL PROCEDURE (§§ 1 — 6005) > Part II. Criminal Procedure (Chs. 201 — 238) > CHAPTER 207. Release and detention pending judicial proceedings (§§ 3141 — 3156)*

## § 3142. Release or detention of a defendant pending trial

(a) In general.   Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be—

(1)  Released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;

(2)  released on a condition or combination of conditions under subsection (c) of this section;

(3)  temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or

(4)  detained under subsection (e) of this section.

(b) Release on personal recognizance or unsecured appearance bond.   The judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (*42 U.S.C. 14135a*), unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

(c) Release on conditions.

(1)  If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—

(A)  subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (*42 U.S.C. 14135a*); and

Case 21-2563, Document 26, 11/09/2021, 3208143, Page30 of 37

**(B)** subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—

**(i)** remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community;

**(ii)** maintain employment, or, if unemployed, actively seek employment;

**(iii)** maintain or commence an educational program;

**(iv)** abide by specified restrictions on personal associations, place of abode, or travel;

**(v)** avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

**(vi)** report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

**(vii)** comply with a specified curfew;

**(viii)** refrain from possessing a firearm, destructive device, or other dangerous weapon;

**(ix)** refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (*21 U.S.C. 802*), without a prescription by a licensed medical practitioner;

**(x)** undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose;

**(xi)** execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required, and shall provide the court with proof of ownership and the value of the property along with information regarding existing encumbrances as the judicial office may require;

**(xii)** execute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance of the person as required and shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property; such surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond;

**(xiii)** return to custody for specified hours following release for employment, schooling, or other limited purposes; and

**(xiv)** satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

In any case that involves a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title [*18 USCS § 1201*, *1591*, *2241*, *2242*, *2244(a)(1)*, *2245*, *2251*, *2251A*, *2252(a)(1)*, (2), (3), 2252A(a)(1), (2), (3), (4), 2260, 2421, 2422, 2423, or 2425], or a failure to register offense under section 2250 of this title [*18 USCS § 2250*], any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii).

**(2)** The judicial officer may not impose a financial condition that results in the pretrial detention of the person.

**(3)** The judicial officer may at any time amend the order to impose additional or different conditions of release.

**(d) Temporary detention to permit revocation of conditional release, deportation, or exclusion.** If the judicial officer determines that—

**(1)** such person—

**(A)** is, and was at the time the offense was committed, on—

**(i)** release pending trial for a felony under Federal, State, or local law;

**(ii)** release pending imposition or execution of sentence, appeal of sentence or conviction, or completion of sentence, for any offense under Federal, State, or local law; or

**(iii)** probation or parole for any offense under Federal, State, or local law; or

**(B)** is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (*8 U.S.C. 1101(a)(20)*); and

**(2)** the person may flee or pose a danger to any other person or the community;

such judicial officer shall order the detention of the person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take the person into custody during that period, the person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings. If temporary detention is sought under paragraph (1)(B) of this subsection, the person has the burden of proving to the court such person's United States citizenship or lawful admission for permanent residence.

**(e) Detention.**

(1)  If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

(2)  In a case described in subsection (f)(1) of this section, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if such judicial officer finds that—

(A)  the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed;

(B)  the offense described in subparagraph (A) was committed while the person was on release pending trial for a Federal, State, or local offense; and

(C)  a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in subparagraph (A), whichever is later.

(3)  Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—

(A)  an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (*21 U.S.C. 801* et seq.), the Controlled Substances Import and Export Act (*21 U.S.C. 951* et seq.), or chapter 705 of title 46 [*46 USCS § 70501* et seq.];

(B)  an offense under section 924(c), 956(a), or 2332b of this title [*18 USCS § 924(c)*, *956(a)*, or *2332b*];

(C)  an offense listed in *section 2332b(g)(5)(B) of title 18, United States Code* [*18 USCS § 2332b(g)(5)(B)*], for which a maximum term of imprisonment of 10 years or more is prescribed;

(D)  an offense under chapter 77 of this title [*18 USCS §§ 1581* et seq.] for which a maximum term of imprisonment of 20 years or more is prescribed; or

(E)  an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title [*18 USCS § 1201*, *1591*, *2241*, *2242*, *2244*, (a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425].

**(f) Detention hearing.**   The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the community—

18 USCS § 3142

**(1)** upon motion of the attorney for the Government, in a case that involves—

**(A)** a crime of violence, a violation of section 1591 [*18 USCS § 1591*], or an offense listed in section 2332b(g)(5)(B) [*18 USCS § 2332b(g)(5)(B)*] for which a maximum term of imprisonment of 10 years or more is prescribed;

**(B)** an offense for which the maximum sentence is life imprisonment or death;

**(C)** an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (*21 U.S.C. 801* et seq.), the Controlled Substances Import and Export Act (*21 U.S.C. 951* et seq.), or chapter 705 of title 46 [*46 USCS §§ 70501* et seq.];

**(D)** any felony if the person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

**(E)** any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921 [*18 USCS § 921*]), or any other dangerous weapon, or involves a failure to register under *section 2250 of title 18, United States Code* [*18 USCS § 2250*]; or

**(2)** upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—

**(A)** a serious risk that such person will flee; or

**(B)** a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday). During a continuance, the person shall be detained, and the judicial officer, on motion of the attorney for the Government or sua sponte, may order that, while in custody, a person who appears to be a narcotics addict receive a medical examination to determine whether such person is an addict. At the hearing, the person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed. The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the

community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing. The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

**(g) Factors to be considered.**   The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

   **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [*18 USCS § 1591*], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

   **(2)** the weight of the evidence against the person;

   **(3)** the history and characteristics of the person, including—

      **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

   **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

**(h) Contents of release order.**   In a release order issued under subsection (b) or (c) of this section, the judicial officer shall—

   **(1)** include a written statement that sets forth all the conditions to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct; and

   **(2)** advise the person of—

      **(A)** the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release;

18 USCS § 3142

(B)  the consequences of violating a condition of release, including the immediate issuance of a warrant for the person's arrest; and

(C)  sections 1503 of this title [*18 USCS § 1503*] (relating to intimidation of witnesses, jurors, and officers of the court), 1510 [*18 USCS § 1510*] (relating to obstruction of criminal investigations), 1512 [*18 USCS § 1512*] (tampering with a witness, victim, or an informant), and 1513 [*18 USCS § 1513*] (retaliating against a witness, victim, or an informant).

**(i) Contents of detention order.**  In a detention order issued under subsection (e) of this section, the judicial officer shall—

(1)  include written findings of fact and a written statement of the reasons for the detention;

(2)  direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(3)  direct that the person be afforded reasonable opportunity for private consultation with counsel; and

(4)  direct that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.

The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

**(j) Presumption of innocence.**  Nothing in this section shall be construed as modifying or limiting the presumption of innocence.

# History

**HISTORY:**

Added Oct. 12, 1984, *P. L. 98-473*, Title II, Ch I, § 203(a), 98 Stat. 1976; Nov. 10, 1986, *P. L. 99-646*, §§ 55(a), (c), 72, *100 Stat. 3607*, 3617; Nov. 18, 1988, *P. L. 100-690*, Title VII, Subtitle B, § 7073, *102 Stat. 4405*; Nov. 29, 1990, *P. L. 101-647*, Title X, § 1001(b), Title XXXVI, Subtitle B, §§ 3622–3624, *104 Stat. 4827*, 4965; April 24, 1996, *P. L. 104-132*, Title VII, Subtitle A, § 702(d), Subtitle B, § 729, *110 Stat. 1294*, 1302; April 30, 2003, *P. L. 108-21*, Title II, § 203, *117 Stat. 660*; Dec. 17, 2004, *P. L. 108-458*, Title VI, Subtitle K, § 6952, *118 Stat. 3775*; Jan. 5, 2006, *P. L. 109-162*, Title X, § 1004(b), *119 Stat. 3085*; July 27, 2006, *P. L. 109-248*, Title II, § 216, *120 Stat. 617*; Oct. 6, 2006, *P. L. 109-304*, § 17(d)(7), *120 Stat. 1707*; Dec. 23, 2008, *P. L. 110-457*, Title II, Subtitle C, §§ 222(a), 224(a), *122 Stat. 5067*, 5072.

Case 21-2563, Document 26, 11/09/2021, 3208143, Page36 of 37

United States Code Service

Copyright © 2021 Matthew Bender & Company, Inc.

a member of the LexisNexis Group (TM) All rights reserved.

End of Document

**SPA-35**

*USCS Const. Amend. 8, Part 1 of 4*

Current through the ratification of the 27th Amendment on May 7, 1992.

*United States Code Service  >  Amendments  >  Amendment 8 Bail—Punishment.*

## Amendment 8 Bail—Punishment.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

United States Code Service

Copyright © 2021 Matthew Bender & Company, Inc.

a member of the LexisNexis Group (TM) All rights reserved.

End of Document