# 21-2563-cr

### In the United States Court of Appeals for the Second Circuit

United States of America,

Appellee,

v.

Nicholas Turnquist,

Defendant-Appellant.

On Appeal from the United States District Court
For the Western District of New York

### BRIEF FOR APPELLEE
### UNITED STATES OF AMERICA

TRINI E. ROSS
United States Attorney
*Attorney for Appellee*
United States Attorney's Office
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5852

MONICA J. RICHARDS
Assistant United States Attorney
*of Counsel*

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ............................................................i

STATEMENT OF JURISDICTION..............................................1

COMBINED STATEMENT OF THE CASE AND.....................1

STATEMENT OF FACTS .............................................................1

    A.   The Federal Complaint and Indictment .........................1

    B.   The Wyoming County Charges Against Turnquist .........................3

    C.   The Wyoming County Charges Against Turnquist's Wife Carly Turnquist For Witness Intimidation.................................4

    D.   The Genesee County Charges Against Turnquist ............................5

    E.   The Erie County Charges Against Turnquist ...................................5

    F.   Motions for Release from Custody...................................5

STATEMENT OF THE ISSUE .....................................................9

SUMMARY OF THE ARGUMENT ............................................9

ARGUMENT...............................................................................10

   I.  The District Court Did Not Clearly Err When It Ordered Turnquist's Detention ...............................................10

    A.  Governing Law and Standard of Review.......................10

    B.  Discussion.......................................................12

CONCLUSION............................................................................17

# TABLE OF AUTHORITIES

*Cases*

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) .................................. 11

*United States v. Contreras*, 776 F.3d 51 (2d Cir. 1985) .................................... 11

*United States v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007) .................................... 11

*United States v. Shakur*, 817 F.2d 189 (2d Cir. 1987) ...................................... 12

*United States v. Watkins*, 940 F.3d 152 (2d Cir. 2019) ................................ 11, 12

**Statutes**

18 U.S.C. § 2423(a) ........................................................................................ 1, 2

18 U.S.C. § 2423(e) ........................................................................................... 1

18 U.S.C. § 3142(e)(3) .................................................................................. 6, 11

18 U.S.C. § 3142(e)(3)(E) ................................................................................ 11

18 U.S.C. § 3142(g) .......................................................................................... 11

18 U.S.C. § 3145(c) ............................................................................................ 1

18 U.S.C. § 3231 ................................................................................................ 1

Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156 ........................................ 10

N.Y. Penal Law § 130.25(2) .............................................................................. 5

N.Y. Penal Law § 130.30(1) .............................................................................. 3

N.Y. Penal Law § 130.65(1) .............................................................................. 5

N.Y. Penal Law § 130.96 .................................................................................. 3

N.Y. Penal Law § 70.80(4)(a)(iii) ..................................................................... 5

N.Y. Penal Law § 70.80(4)(a)(iv) ..................................................................... 5

N.Y. V&T Law § 1192-2 .................................................................................. 12

i

## STATEMENT OF JURISDICTION

The district court (Sinatra, J.) had jurisdiction of this case pursuant to 18 U.S.C. § 3231, by reason of an Indictment charging defendant-appellant Nicholas Turnquist with transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a) and 18 U.S.C. § 2423(e). (A[1] 20-21).

This Court has jurisdiction over this interlocutory appeal insofar as it relates to a determination on the issue of bail only pursuant to 18 U.S.C. § 3145(c).

## COMBINED STATEMENT OF THE CASE AND STATEMENT OF FACTS

### A.    The Federal Complaint and Indictment

On November 2, 2020, the district court signed a complaint charging Turnquist with violating 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity). (A 7-17). As set forth in the affidavit of FBI Special Agent Randall E. Garver filed in support of the complaint, Turnquist is believed to have sexually abused and repeatedly raped his minor stepdaughter, identified as Victim 1, over a period of years, beginning when Victim 1 was approximately 12 years old. (A 9-17). The affidavit further alleged

---

[1] References to "A" are to pages of the Appendix, filed by Turnquist with his brief.

that Turnquist took Victim 1 on a number of out-of-state trips for the purpose of sexually abusing her. (*Id.*). This included trips to Splash Lagoon in Erie, Pennsylvania, Great Wolf Lodge in Canada, an aquarium in Baltimore, Maryland, Disney World in Orlando, Florida, and a water park in Sandusky, Ohio. (*Id.*). The affidavit outlined supporting documentation and evidence for the travel. (A 13-14, 16). When the Wyoming County Sheriff's Office/East Aurora Police Department searched the Turnquist residence and arrested him, Turnquist said he had sexual intercourse with the victim but Turnquist claimed she was 18 years old at the time. (A 12).

On November 6, 2020, an initial appearance was held on the criminal complaint and Federal Public Defender Fonda Kubiak was appointed as counsel. (*See* A 2, Entry 4). The government moved for detention and noted that a presumption of detention applied. (*See id.*). Turnquist deferred on the question of detention pending resolution of the circumstances of his state custody. (*See id.*). The Magistrate Judge entered an order remanding Turnquist to state custody. (A 18-19).

On February 3, 2021, a federal grand jury returned an Indictment charging Turnquist with one violation of 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity). (A 20-21). The Magistrate Judge arraigned Turnquist on the Indictment on February 11, 2021. (*See* A 3,

Entry 12). Assistant Federal Public Defender Kubiak was relieved as counsel and Robert Singer was appointed to represent Turnquist. (*See id.*). The government again moved for detention. (*See id.*). On February 25, 2021, Turnquist agreed to waive a detention hearing and reserved the right to seek bail upon a change of circumstances with his state bail. (*See* A 3, Entry 14).

## B. The Wyoming County Charges Against Turnquist

On or about July 28, 2020, a Wyoming County Grand Jury indicted Turnquist on two counts of Predatory Sexual Assault Against a Child, in violation of N.Y. Penal Law § 130.96, and one count of Rape in the Second Degree, in violation of N.Y. Penal Law § 130.30(1). (A 116-117).

The predatory sexual assault charges alleged that Turnquist committed a course of sexual conduct and rape against a child under the age of 13 years old. (*Id.*). The case went to trial in July 2021. (A 42-71 (transcript excerpts from trial)). At trial, Victim 1 testified that Turnquist began sexually assaulting and raping her years earlier, sometime after she was badly injured by a reckless driver and shortly before the family took a trip to Disney World. (A 43-46). Victim 1 recalled the trip to Disney World occurred in 2011, at which time Victim 1 would have been 12 years old. (A 46). On cross-examination, the defense produced evidence that the trip to Disney World actually occurred in 2012 – when Victim 1 was 13 years old. (A 59-60). Because the state predatory sexual

3

assault charges required as an element that the victim be younger than 13 years old at the time of the sexual assault, the trial judge granted Turnquist's motion for a trial order of dismissal.

[NB: the record does not contain any documents from the Wyoming County Court proceeding regarding the dismissal. Turnquist and the government agree that the dismissal was due to a failure on the proof to establish the state crime charged which required as an element that the victim be under age 13 at the time of the sexual assault. Turnquist, without any corroboration by any trial court record, further asserts that the dismissal was based on a finding that the victim's testimony or other testimony and/or evidence was inconsistent or incredible. The government avers that there is no basis on this record for this claim.].

**C.    The Wyoming County Charges Against Turnquist's Wife Carly Turnquist For Witness Intimidation**

On the very day that Victim 1 testified at trial in Wyoming County Court, she was accosted and frightened by Turnquist's wife, Carly Turnquist, who was subsequently charged by felony complaint with witness tampering. (A 121-123). The felony complaint states that as Victim 1 drove home from court after testifying, Carly Turnquist drove her car close behind Victim 1's car, passed

Victim 1 in a no-passing zone and stared at her, and then cut in front of Victim 1's car and braked suddenly. (*Id.*). Trial has not been scheduled yet.

### D.    The Genesee County Charges Against Turnquist

On or about February 4, 2021, a Genesee County Grand Jury indicted Turnquist on one count of Sexual Abuse in the First Degree, in violation of N.Y. Penal Law § 130.65(1), and count of Rape in the Third Degree, in violation of N.Y. Penal Law § 130.25(2). (A 126). Turnquist faces up to seven and four years in state prison on these charges, respectively.   *See* N.Y. Penal Law § 70.80(4)(a)(iii) and (iv). Trial is scheduled for February 28, 2022.

### E.    The Erie County Charges Against Turnquist

On or about June 30, 2021, an Erie County Grand Jury indicted Turnquist on three counts of Rape in the Third Degree, in violation of N.Y. Penal Law § 130.25(2). (A 128-129). Turnquist faces up to four years in state prison on each of these rape counts. *See* N.Y. Penal Law § 70.80(4)(a)(iv). Upon information and belief, trial has not been scheduled yet on the Erie County charges.

### F.    Motions for Release from Custody

On August 21, 2021, Turnquist filed a motion for release from custody. (A 24-102) which the government opposed (A 103-141). The district court denied the motion for release for failure to rebut the presumption of 18 U.S.C.

§ 3142(e)(3) in favor of detention but entered it without prejudice to renew. (*See* A 4, Entries 28 and 29).

On September 13, 2021, Turnquist filed a second motion for release from custody (A 272-278) which the government opposed (A 279-285) and Turnquist replied (A 286-288). The district court held a bail hearing on September 9, 2019 (A 289-306) and September 17, 2019 (A 309-333). At the hearing, Turnquist proposed that he was not a flight risk given the financial sureties he, his wife, and mother had made with regard to the pending cases in Wyoming and Erie County and a willingness by his mother to post $50,000, secured by her house. (A 313-319). The government opposed on the grounds that Turnquist's detention was due to a statutory presumption which was not allayed by any bail application or bail package. (A 319). The government reiterated that in light of Turnquist's admission made during a controlled call with the victim (transcript included at A 351-352), the mandatory minimum of 10 years and up to life in prison, as well as his past conduct not just in terms of sexual abuse but also other physical assaults and threats of physical harm, all amounting to more than a one-time incident, that Turnquist's mother's financial commitment did not overcome the presumption of detention. (A 319-320). The Magistrate Judge found that the proposed bail package of $50,000 secured by Turnquist's mother's

home "would reasonably assure" the Court that Turnquist would not pose a risk of flight or danger to the community. (A 323).

The government moved for review by the district court of the bail decision. (A 334-357). The government relied on (1) the seriousness of the offense to which a mandatory minimum term of 10 years imprisonment applies; (2) the strength of the evidence which includes corroboration by witnesses other than the victim, recorded calls made by Turnquist, and an admission to East Aurora police during an interview shortly before his arrest; (3) Turnquist's history and characteristics to include the charged conduct as well as threats of physical violence against the victim and others if the victim reported the sexual abuse and actual physical harm against the victim; and (4) that Turnquist's release poses a serious risk to children and the Magistrate Judge's release order only limited contact with regard to one of his stepdaughters who is a witness and though it requires supervision during visits with other children, the victim testified at the Wyoming County trial that Carly Turnquist participated in the sexual abuse of her. (A 342-347).

Turnquist filed opposition to the motion (A 358-370) and the government filed a reply (A 373-377). On September 30, 2021, the district court held argument on the government's motion, granted the government's motion, and revoked the magistrate judge's release order. (A 381-405). The district court held

7

that the rebuttable presumption applied and that Turnquist had not introduced sufficient evidence to rebut the presumption that no condition or a combination of condition[s] will reasonably assure the safety of the community if he were released pending trial. (A 403). The district court considered the offense as "obviously serious" in that it carries a minimum of ten years and maximum of life and qualifies as a crime of violence involving a minor and the evidence as strong where there is corroborating evidence from a minor witness, two phone calls where Turnquist's statements evidenced guilt, and records documenting the out-of-state trip (*Id.*). Further, the district court considered Turnquist's past threats to the victim as well as his potential access to minor children if released. (A 403-404). The district held "by clear and convincing evidence that Mr. Turnquist's release would pose a danger to the safety of others in the community and that no condition or combination of conditions will assure the safety off others or the community if Mr. Turnquist were released, pending trial." (A 404). Because it found that the government established Turnquist's danger to the community by clear and convincing evidence, it held that it did not need to decide whether his release poses a risk of flight. (*Id.*).

This timely appeal from the Decision and Order granting the government's motion to revoke the Magistrate Judge's order of release followed. (A 407).

8

## STATEMENT OF THE ISSUE

Whether the district court clearly erred when it ordered Turnquist's detention, having granted the government's motion to revoke the Magistrate Judge's release order, where the evidence was clear and convincing that Turnquist's release posed a danger to the safety of others in the community and no condition or combination of conditions will assure the safety of others in the community based, in part, on his past conduct of physical and sexual assault against the minor daughter of his former wife while the victim lived in his home, over the course of many years; his threats against the victim and others with physical harm if they disclosed his conduct; and physical assault against other members of his family and household.

## SUMMARY OF THE ARGUMENT

Where Turnquist was charged with a serious offense for which he faces a mandatory minimum of ten years' imprisonment and the possibility of a lifetime term of imprisonment, and the application of the presumption in favor of detention applicable to the charge, and all of the relevant factors weigh in favor of detention, nothing raised upon this appeal provides a basis upon which this Court could find that the district court clearly erred in ordering detention.

The proof against Turnquist resulted from an investigation which disclosed not just the victim's statements but also a witness to the sexual abuse,

9

a phone call between Turnquist and his current wife, Carly, where they discussed the charges in an incriminating manner, another phone call between Turnquist and the victim where he apologized to her for his conduct, records corroborating the out-of-state trip during which he is charged with sexually abusing the victim, and an admission to law enforcement by Turnquist to having a sexual relationship with the victim, although he claimed she was 18 at the time. None of the arguments made on this appeal, limited as it is to a review of the order of detention, provide a basis upon which this Court should disturb the order.

## ARGUMENT

### I. The District Court Did Not Clearly Err When It Ordered Turnquist's Detention

#### A. Governing Law and Standard of Review

Bail decisions are controlled by the Bail Reform Act of 1984. 18 U.S.C. §§ 3141-3156. Section 3142(f) of the Act authorizes a court to detain an individual prior to trial. Upon consideration of a request for detention pending trial, the trial court considers four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment,

10

financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). A presumption in favor of detention applies when there is probable cause to believe that the defendant committed, *inter alia*, an offense an offense involving a minor victim under section … 2423, … of this title. 18 U.S.C. § 3142(e)(3)(E). This is a rebuttable presumption, that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community if the defendant is released. *United States v. Contreras*, 776 F.3d 51, 54-55 (2d Cir. 1985); 18 U.S.C. § 3142(e)(3).

This Court applies "deferential review to a district court's order of detention and will not reverse except for clear error." *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019), quoting *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). The standard applies broadly:

> This clear error standard applies not only to the court's specific predicate factual findings but also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release. We defer to the district court on such matters because of its unique insights into the defendant as an individual and into his personal, professional, and financial circumstances.

*United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004) (citations omitted). Therefore, a district court's detention decision will be affirmed absent a "definite

11

and firm conviction that a mistake has been committed." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (citations and quotations marks omitted); *see also Watkins*, 940 F.3d at 158.

### B. Discussion

The district court committed no error, let alone clear error, in granting the government's motion to revoke the Magistrate Judge's release order. Turnquist is charged with sexually abusing his then-wife's daughter when she was a minor and, if released, he would have access to at least one of his two own biological minor daughters (access to the other being limited as she is a witness to the charged events) as well as the minor daughter and son of his current wife, Carly Turnquist. According to the victim's trial testimony in Wyoming County, Carly Turnquist joined in the sexual abuse of Victim 1. (A 52). Also, Carly Turnquist has been charged with felony witness tampering in Wyoming County Court, and on September 15, 2021, she was charged with another crime, this time in the Town of Lancaster, where she was charged by felony complaint with Aggravated DWI with a Child-Passenger Less than 16 (Leandra's Law) in violation of the New York Vehicle and Traffic Law Section 1192-2. (A 379-380). As set forth in the felony complaint, Carly Turnquist was driving a motor vehicle while under the influence of stimulants and sedatives and struck another vehicle

at around 7:34 p.m. on Transit Road near Como Park Blvd. in Lancaster. (*Id.*). Her 9-year-old daughter was in the backseat of the vehicle at the time. (*Id.*).

In light of Carly Turnquist's own conduct as described above, the government asserted that she cannot be relied upon to supervise Turnquist's interaction with his own biological daughter let alone with Carly Turnquist's daughter, not biologically related to Turnquist, with whom Turnquist would live. Consequently, it is beyond challenge that Turnquist's release would pose a serious risk of danger to the community, including children in his care, both biological and related by marriage. This is precisely the case to which the presumption should apply; Turnquist is charged with sexually abusing the daughter of his then-wife when she was a minor and in his care and if released, would be living with and/or have access to the minor children of his current wife as well as his own biological daughter (per a Family Court custody order).

The foregoing considerations and circumstances provide ample basis for the district court's conclusion that Turnquist presents a continuing danger to the community and has not rebutted the presumption. Nothing raised on this appeal presents a basis upon which this Court could find that the district court clearly erred in making any of the foregoing determinations. The charges against Turnquist are serious, the 10-year mandatory minimum sentence he faces if convicted is significant, the evidence against him presented by way of proffer is

strong evidence of his guilt, and given his prior conduct, as well as that of Carly Turnquist with whom he would reside who has also demonstrated past conduct that would not warrant placing her in a position to supervise Turnquist, he represents a danger to the community. The presumption for detention imposed by Congress is warranted here and Turnquist should remain in custody.

Turnquist sets forth a host of claims in his brief but none provide a basis upon which this Court should find clear error in the district court's detention decision yet each is briefly addressed in turn:

First, Turnquist asserts that he has rebutted the presumption of dangerousness (Turnquist Brief, pp. 42-45), but he has not. He is charged with a serious offense, one that involves physical harm against a minor who was in his care, the daughter of his then-wife, and carries a mandatory minimum sentence of ten years. Whether Turnquist believes in the strength of the government's case is immaterial; the witness has provided sworn testimony as to the repeated sexual assaults and those are available for this Court's review. (A 42-54). The testimony is corroborated by other evidence including a recorded call with the victim, recorded calls from jail with his wife, and documents related to the trip. What is uncorroborated is Turnquist's claims that there was a finding in Wyoming County that the victim was found not credible. This record contains no findings regarding this witness or any other witness or evidence presented in

14

the Wyoming County case; regardless of whether it's a burden of persuasion or production, this record does not support a finding that the presumption has been rebutted.

Second, Turnquist asserts that the conclusion regarding dangerousness as proven by clear and convincing evidence and that no conditions would reasonably address those concerns was clearly erroneous (Turnquist Brief, pp. 45-54) but again, he offers nothing other than his own interpretation and opinion as to the record and evidence proffered in support of detention. This is a heinous crime whereby Turnquist caused serious harm; Turnquist is charged with the very conduct that demonstrates his dangerousness. Though Turnquist opines that Judge Sinatra erred because three other judges released Turnquist on bail, there was no statutory presumption regarding detention when the state court judges considered his requests for bail and he did not face a ten-year mandatory minimum in the state court proceedings. Also, there is simply no such thing as placing "too much weight on the nature of the offense and weight of the evidence prongs" as Turnquist claims in his Brief at pages 45-48. The detention decision involves weighing factors and here the nature of the offense is indisputably serious; he is alleged to have raped a child. And the victim has already provided sworn testimony outlining the sexual assaults that repeatedly took place. (A 42-54).

15

Further, as to his history and characteristics, the victim already testified at a state court trial that Turnquist threatened her and her mother and other family members with violence if they reported on Turnquist's conduct. (A 48, 51). In addition to the sexual assault, the victim testified that Turnquist was physically violent towards her in other ways, in that he hit her in the face, shoved her, and grabbed her if she was misbehaving or did or said something that he did not like. (A 48, 51). Turnquist also hit her mother, her sisters, and Turnquist's brother. (A 51). In light of such conduct, any other characteristics alleged by Turnquist to be redeeming do not bear consideration. Again, Turnquist is charged with the very conduct that demonstrates his dangerousness.

As to Turnquist's allegation that the district court failed to address the question of whether the conditions of release were inadequate (Turnquist Brief, pp. 49-53), Turnquist asserts that he rebutted the government's (and district court's) concern that he might engage in this type of conduct with other children but all he has asserted is that he has not done so yet. The government did not allege that he had already done so with regard to other children but did provide evidence, in the form of the victim's sworn testimony, that Turnquist physically abused other children and threatened harm to others if they discussed Turnquist's conduct with law enforcement. (A 51). Thus, the most obvious deficiency was that the terms of release permitted Turnquist to have contact with

other minor children of his own and those of his current wife; he would be living with the minor daughter and son of his current wife, Carly Turnquist, and have permission to visit a biological daughter (but not the one who was a witness to the sexual abuse of the victim). Though he posits that he could live elsewhere, he would still have access; such is ample basis for the district court's finding.

In conclusion, where none of the concerns raised on this appeal provide a basis upon which this Court should find clear error or disturb the determination to detain Turnquist pending trial, this Court should affirm the detention order.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's detention order.

Dated: December 8, 2021, Buffalo, New York.

Respectfully submitted,

TRINI E. ROSS
UNITED STATES ATTORNEY
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202

By:     *s/ Monica J. Richards*
MONICA J. RICHARDS
Assistant United States Attorney
*Of counsel*

17

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

                        Appellee,                        CA # 20-2563-cr

          -v-

NICHOLAS TURNQUIST,

                       Defendant-Appellant.

_____

I, MONICA J. RICHARDS, Assistant United States Attorney for the Western District of New York, hereby certify that the foregoing brief complies with this Court's Local Rule 32.1(a)(4)(A) word limitation in that the brief is calculated by the word processing program to contain approximately 4,320 words, exclusive of the Table of Contents, Table of Authorities and Addendum of Statutes and Rules.

                                       *s/ Monica J. Richards*
                                       MONICA J. RICHARDS
                                       Assistant U.S. Attorney