# 21-2563-cr

---

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

———

UNITED STATES OF AMERICA,

*Appellee,*

vs.

NICHOLAS TURNQUIST,

*Defendant-Appellant.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———

## REPLY BRIEF FOR DEFENDANT-APPELLANT

## NICHOLAS TURNQUIST

———

SINGER LEGAL PLLC
ROBERT C. SINGER, ESQ.
*Attorneys for Defendant-Appellant Nicholas Turnquist*
80 East Spring Street
Williamsville, New York 14221
Telephone: (716) 222-3288
Email: rob@singerlegalpllc.com

---

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................i

TABLE OF AUTHORITIES ...........................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

ARGUMENT .............................................................................1

I.   The presumption of dangerousness was rebutted by more
     than just "interpretation and opinion." ...................................1

II.  The government's proof of Mr. Turnquist's "violent" history
     and characteristics is based on the unverified allegations of
     Ms. Kranz only...................................................................4

III. The evidence "corroborating" Ms. Kranz's allegations is not
     as compelling as the government believes.................................7

IV.  Contrary to the government's argument, placing too much
     emphasis on the weight of the evidence is erroneous. ...............8

V.   The government's remaining arguments fail to show how
     the District Court's conclusion that dangerousness was proven
     by clear and convincing evidence and that no conditions
     reasonably address those concerns to warrant release was not
     "clearly erroneous."............................................................9

VI.  The government does not address Mr. Turnquist's preparation
     concerns. ........................................................................11

CONCLUSION ........................................................................12

CERTIFICATE OF COMPLIANCE..............................................14

# TABLE OF AUTHORITIES

## **Cases**

*United States v. Alston*, 420 F.2d 176 (D.C. Cir. 1969) .................................................................9

*United States v. Mattis*, 963 F.3d 285 (2d Cir. 2020) ...................................................2, 4, 10

*United States v. Mendez*, No. 19-CR-00245-EAW, 2020 U.S. Dist.
    LEXIS 105823 (W.D.N.Y. Jun. 17, 2020) ...........................................................................9

*United States v. Mercedes*, 254 F.3d 433 (2d Cir. 2001) ................................................................2

*United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) ......................................................9

*United States v. Rodriguez*, 950 F.2d 85 (2d Cir. 1991) ......................................................... 2, 3

## **Statutes**

18 U.S.C. § 3142 ...............................................................................................................*passim*

## **Rules**

Fed. R. App. P. 32 ...............................................................................................................15

## INTRODUCTION AND SUMMARY OF ARGUMENT

In its brief in opposition, the government attempts to support the District Court's detention decision by raising concerns about Mr. Turnquist's access to minors; by commenting that Carly Turnquist is an inadequate supervisor; and, by arguing that the rebuttable presumption of dangerousness was not rebutted by something other than "opinion" and conjecture. Not only are these arguments unpersuasive, but they also deflect attention from the factual and legal attacks that Mr. Turnquist mounted against the District Court's decision to detain the defendant pending trial. As set forth in Mr. Turnquist's initial brief and below, the District Court clearly erred because it misapplied legal standards and precedent governing pretrial release and detained Mr. Turnquist when lessor forms of restraint and supervision could have been employed to ameliorate the defendant's perceived risk to Ms. Kranz, his children, and society. This is a mistake that needs to be corrected. This Court should intervene and release Mr. Turnquist from custody.

## ARGUMENT

### I.   The presumption of dangerousness was rebutted by more than just "interpretation and opinion."

In its brief, the government quips that Mr. Turnquist "offers nothing other than his own interpretation and opinion" as to why the District Court's conclusion regarding dangerousness was clearly erroneous. *See* G.Br. at 15. This is

1

not accurate. In his brief, Mr. Turnquist presented several legal and factual arguments challenging this determination.

First, Mr. Turnquist offered case law which makes clear that, in the context of a detention hearing, the defendant bears a "limited burden" of *production – not persuasion* – to show that he is not such a dangerous person that no conditions will ensure the safety of the community if he is released. *See* D.Br. at 42 (citing *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce *some evidence* contrary to the presumed fact in order to rebut the presumption.") (emphasis added). To the extent the government (and the District Court) advocate for a different, more exacting standard, this position should be rejected as it finds no support in the Second Circuit or elsewhere.

Second, Mr. Turnquist offered evidence referenced in his motions and responses to prove how the presumption was rebutted. *See* D.Br. at 16-24, 41-42 (citing A.24-41, A.144-150; A.272-78, A.286-88; A.358-70; A.42-102, A.151-271; CA.8-24; A.371-72). This evidence did more than just offer "interpretation and opinion" – it *proved* how Ms. Kranz's allegations are inconsistent, sometimes contradicted by irrefutable evidence, and fraught with ulterior motives. This evidence undermines the crux of the government's case and arguments in favor of detention.

2

Third, Mr. Turnquist offered the bail report, CA.1-7, which recommended Mr. Turnquist's release on conditions. *See* D.Br. at 43-44. The arguments of Mr. Turnquist – and the conclusions of the Probation Office and Magistrate Judge McCarthy in favor of release – were based on the defendants' *verified* history and characteristics in the bail report, all of which *prove* that Mr. Turnquist has none of the traditional "red flags" associated with remand of a defendant. *See* D.Br. at 49 n.9 (citing cases commenting how release is inappropriate when a defendant has prior convictions for felonies, bail violations, substance abuse problems, poor mental health, and a lack of legitimate employment and family ties).

All of these submissions and arguments constituted "some evidence contrary to the presumed fact" of dangerousness, *see Rodriguez*, 950 F.2d at 88, and supported *all* of the arguments made by defense counsel in the proceedings below (and in this appeal). This is why the government's claim that Mr. Turnquist "offered nothing" to rebut the presumption is absurd – this claim finds no support in the record. Likewise, the government's (and the District Court's) conclusion that the presumption was not adequately rebutted also finds *no support* in the record, all of which should lead this Court to possess a "definite and firm conviction that a mistake [was] committed." *Mattis*, 963 F.3d at 291.

3

**II.    The government's proof of Mr. Turnquist's "violent" history and characteristics is based on the unverified allegations of Ms. Kranz only.**

Just like in the District Court, the government argues in its appellate brief that Mr. Turnquist has a history of violence and, as a result, "any other characteristics alleged by Turnquist to be redeeming do not bear consideration." *See* G.Br. at 16.  While this dismissive missive is appealing at first, closer inspection reveals its flaw:  The allegation is made by Ms. Kranz and not supported by anything more than her words.  These words, even if uttered under oath, are not worthy of belief.

First, the allegations are not corroborated by anyone else or anything else in the record.  In its brief, the government did not cite to any physical or testimonial evidence which corroborates this allegation.  This is because there is no such evidence in the record.  Instead, the evidence in the record proves that Ms. Kranz did not report this type of behavior to CPS in 2012.  A.72-89.  Neither did her mother, Amanda Turnquist.  *See id.*  The evidence in the record also proves that school officials and the police did not hear of or see evidence of physical abuse of Ms. Kranz, her mother, or her siblings.  A.91-92.  Amanda Turnquist also did not testify about this type of violent behavior before the grand jury.  A.93-100.

Second, the fact that Ms. Kranz made these allegations under oath lends no further credibility to these allegations than if they were made outside of a courtroom.  This is so because Ms. Kranz has demonstrated contempt for the oath.

4

No where else was this on greater display than at the Wyoming County trial when she

forgot (and then emphatically denied) sending text messages to Mr. Turnquist in 2017

that requested sex or said "I love you." A.67-69. As the record makes clear, the

evidence tells a different story. On multiple occasions, Ms. Kranz states the following

to Mr. Turnquist over text message:



-1

| 3300 | SMS Messages | Incoming | | 02/27/2017 17:34:31(UTC-5) | From: +17169827216 Unknown | So get home at like 8:30 don't be messing around for her and tie me up and fuck the shit out of me then |
|---|---|---|---|---|---|---|
| | | | | | | Source Extraction: Logical (1), Logical (2) |
| 3301 | SMS Messages | Incoming | | 02/27/2017 17:34:49(UTC-5) | From: +17169827216 Unknown | Lol he doesn't make love..he fucks...HARD lol |
| | | | | | | Source Extraction: Logical (2), Logical (1) |

A.163; A.167; A.176; A.177; A.189; A.203; A.219; A.230.  Moreover, Ms. Kranz's claims to Judge Mohun, the Supreme Court Justice overseeing the Wyoming County trial, that the messages were not written by her, A.69, is breathtaking.  Throughout the messages in the record, Ms. Kranz and Mr. Turnquist discuss topics, that only concern Ms. Kranz, on hundreds of occasions, on a daily and recurring basis, so to claim these messages are "staged" or "fabricated" is simply incredible.  The evidence undeniably refutes that claim.  What's more, these messages also refute her sworn testimony that the sexual encounters in 2017 were non-consensual.

Given how Ms. Kranz has no problem lying to a jury and to the face of a sitting Supreme Court Justice, this Court should find that her statements, under oath or otherwise, should be viewed with a healthy dose of skepticism and not credit them, without something more.  This is why the government's (and the District Court's) faith in the veracity of these uncorroborated claims is misplaced and mistaken.[1]

---

[1] In the same vein, the government argues that, notwithstanding the order of dismissal, the Wyoming County Court did not make a finding that Ms. Kranz was "not credible."  *See* G.Br. 4, 14.  The facts demonstrate otherwise.  The Wyoming County Court considered Ms. Kranz's testimony, in light of the competing evidence presented by the defense (that the assaults occurred at a different time than she testified to at trial), and chose to believe the defense evidence over Ms. Kranz's testimony and dismissed the case.  The court did so, even though Ms. Kranz allegedly spent the "last year-and-a-half- of [her] life looking into [the charges]."  A.54.  Moreover, if Ms. Kranz's testimony was simply mistaken about the dates of the

Furthermore, this evidence cannot be ignored simply because Mr. Turnquist is

charged with a "heinous" crime or because his choice to have relations with his de

facto step daughter in 2017 (when such relations were perfectly legal) is immoral.

This is the type of evidence that undermines the government's arguments and makes

proving dangerousness by clear and convincing evidence impossible. And this is why

the District Court's conclusion regarding dangerousness was clearly erroneous.

**III.** **The evidence "corroborating" Ms. Kranz's allegations is not as compelling as the government believes.**

In its brief, the government argues that "[w]hether Turnquist believes in

the strength of the government's case is immaterial" simply because Ms. Kranz

provided sworn testimony that is "corroborated" by the controlled call, the jail house

call, and travel documents regarding the trip to Erie, PA. *See* G.Br. at 14. The

problem with this statement is that it ignores both the law and the evidence of perjury

discussed *infra*. The Bail Reform Act does not allow a court to "disregard" defense

argument simply because someone says something under oath and the government

can marshal something it believes corroborates the witness' testimony. Instead, the

law directs courts to evaluate all the evidence, even evidence the government does not

present and/or disputes.

---

assaults, then it was easy for the District Attorney to re-charge Mr. Turnquist with
rape not involving a minor under 12 years old, but the Wyoming County District
Attorney *declined to do so*. This choice is telling about the credibility of Ms. Kranz.

Here, the sworn testimony of Ms. Kranz should not be afforded great deference for the reasons set forth above. On top of that, the corroboration evidence is not as compelling as the government argues. The controlled call does not contain a "smoking gun" confession – Mr. Turnquist denies the allegations levied against him multiple times and the call discusses the consensual sexual activity between he and Ms. Kranz when she was older, not sex with her as a child. D.Br. at 30; A.350-52. The jail house call regarding legal defenses is not an admission, either. D.Br. at 30. The "eyewitness" account of M.T. does not offer direct proof of sexual activity and is subject to doubt for other reasons. D.Br. at 29-30. And having "documents" relating to the trip is inconsequential – nobody disputes that the trip occurred. *See id.*

IV. **Contrary to the government's argument, placing too much emphasis on the weight of the evidence is erroneous.**

In its brief, the government argues that "there is simply no such thing as placing 'too much weight on the nature of the offense and weight of the evidence prongs.'" G.Br. at 15. This is not correct. As Mr. Turnquist pointed out in his brief, case law suggests that failure to link how the "weight of the evidence" relates to the likelihood the defendant will commit additional crimes and, thus, is a danger to another person or the community, is an important factor in the analysis. *See* D.Br. at 47 (citing *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (Kennedy, J.)). Furthermore, Mr. Turnquist also raised how case law consistently has warned district courts to be cautious when weighing the "weight of the evidence" factor and have

8

suggested that the weight of the evidence prong is the least important of the 3142(g) factors. *See* D.Br. at 47 (citing *United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969); *Motamedi*, 767 F.2d at 1408; *United States v. Mendez*, No. 19-CR-00245-EAW, 2020 U.S. Dist. LEXIS 105823, at *12 (W.D.N.Y. June 17, 2020)).

Mr. Turnquist believes that the District Court was not cautious and afforded this factor undue weight because the District Court did not explain what, if any, balancing took place or how the District Court resolved the balance in favor of detention. *See* D.Br. at 47. The thin opinion the District Court issued supports this belief. And it should leave this Court with a "definite and firm conviction that a mistake [was] committed." *Mattis*, 963 F.3d at 291. This is why the District Court's conclusion was clearly erroneous and grounds exist for reversal.

## V. The government's remaining arguments fail to show how the District Court's conclusion that dangerousness was proven by clear and convincing evidence and that no conditions reasonably address those concerns to warrant release was not "clearly erroneous."

The government devotes a majority of its brief to addressing its concern that Mr. Turnquist is a danger because release will afford him access to his own biological children and his wife Carly's children. G.Br. at 12-13, 16. According to the government, Mr. Turnquist is likely to reoffend if he has access to these children and Carly Turnquist is an inadequate supervisor because of her own legal issues. *See id.* These arguments are unavailing for the same reason the District Court's use of them to detain Mr. Turnquist is "clearly erroneous." First, such allegations were

investigated and denied by his children. A.367. The government does not find

comfort in this, G.Br. at 16, but this is a *fact* that the government, *who has the burden of proof*, did not refute. Second, the government speculates that Mr. Turnquist will "do

this again," but it provided *no evidence* to support this speculative claim. The record

does not support it and, unlike the District Court, this Court should reject this

erroneous speculation as a reason to detain Mr. Turnquist. Third, just like the District

Court, the government erroneously leaps to detention by finding that Magistrate

Judge McCarthy's condition allowing contact with minors and/or Carly Turnquist

acting as a supervisor for visitation is inadequate. Even if these objections are

legitimate, detention still *is not* the answer. As this Court knows, the Bail Reform Act

directs courts to impose *the least restrictive conditions* possible that will *reasonably* assure

the defendant's appearance and the safety of the public. *See* 18 U.S.C. § 3142(c)(1)(B).

Here, as the defense suggested in the proceedings below, if the court cannot trust

Mr. Turnquist to act appropriately around minors and/or cannot trust Carly

Turnquist to supervise Mr. Turnquist's contact with his children responsibly, then the

answer is *not detention*: rather, the answer is to order the supervision duty to be

performed by someone else, to order Mr. Turnquist to live with someone else, or to

disallow contact with any minor. A.401-02. Rather than considering those options –

or explaining why those options are inadequate – the District Court, just like the

government in its brief, dismissed those options without substantive explanation and

imposed the most restrictive condition (detention). This is improper and "clearly

erroneous" because any one of those options (or a combination thereof) would allay the government's/District Court's concerns, protect minor family members/the public, and serve as a less restrictive means of protecting individuals short of detention. In other words, imposing such conditions would accomplish everything the Bail Reform Act commands. The government's failure to acknowledge this fact[2] is as erroneous as the District Court's failure to do so. This is the strongest reason for finding the District Court's decision "clearly erroneous" and vacating the detention order and releasing Mr. Turnquist from pretrial custody.

## VI. The government does not address Mr. Turnquist's preparation concerns.

Similar to the District Court, the government does not consider, let alone respond, to Mr. Turnquist's concerns regarding trial preparation difficulties. This fall – before the Omicron variant took hold of the northeast by storm – COVID-19 affected Mr. Turnquist's ability to prepare for this motion and appear for this motion. D.Br. at 32, 54-56; A.392. It impeded his ability to meet with his counsel. *See id.* This case is replete with electronic and documentary evidence. Reviewing such material through a glass wall (if non-contact, in-person visits are

---

[2] For example, the government closes its brief by stating "[t]hough [Mr. Turnquist] posits that he could live elsewhere, he would still have [access to his children]". G.Br at 17. Taken to its logical end, this argument indicates that release would be warranted in this case only if conditions could remove *all* risk of danger. Yet, this *is not* the standard under the Bail Reform Act. The Bail Reform Act does not speak in such absolute language – the statue speaks only of conditions that will "reasonably" protect a person and the community. *See* 18 U.S.C. § 3142(c)(1)(B) & (e)(1).

allowed) or over the phone or via letter (if non-contact, in-person visits are not allowed) will materially impede Mr. Turnquist's ability to prepare for this trial. And society's experience over the last few weeks indicates that COVID-19 will become more of an impediment to trial preparation, not less of an impediment. Release on conditions will solve this concern. Even if the government chooses not to respond to this argument, this Court should find that the District Court's decision to do the same and remand Mr. Turnquist without addressing this concern was "clearly erroneous."

## CONCLUSION

Mr. Turnquist presented substantial evidence at his detention hearings that challenged the government's proof, that rebutted the presumption of detention, and that proved how Mr. Turnquist has history and characteristics consistent with pretrial release in other cases. All of this evidence gave the District Court (and any other court) the ability to craft conditions to reasonably assure the safety of Mr. Turnquist's children, concerned family members and witnesses, and the community at large. Notwithstanding this evidence, the District Court chose to detain Mr. Turnquist. This decision was "clearly erroneous." And this Court can correct this mistake by vacating the District Court's detention order and ordering Mr. Turnquist released on the conditions recommend by Magistrate Judge McCarthy

or on other conditions that this Court deems necessary to ensure the safety of others

and the community.

Dated:  December 21, 2021
            Buffalo, New York

                                    **SINGER LEGAL PLLC**

                                    By:＿＿s/ Robert C. Singer, Esq.＿＿＿＿
                                            Robert C. Singer, Esq.
                                    80 East Spring Street
                                    Williamsville, New York 14221
                                    (716) 222-3288
                                    rob@singerlegalpllc.com

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the length restrictions in Fed. R. App. P. 32(a)(7)(B)(i) because it contains 2,876 words, including headings, footnotes and quotations, but excluding the parts exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionately spaced typeface using Microsoft Word 2010 and in 14-point Garamond font.

Dated: December 21, 2021
        Buffalo, New York

**SINGER LEGAL PLLC**

By:___s/ Robert C. Singer, Esq._____
        Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York 14221
(716) 222-3288
rob@singerlegalpllc.com

14