### UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 21-2563 & 22-757 _____   _____ Caption [use short title] _____

**Motion for:** Pretrial Release pursuant to FRAP 9(a)

_____

_____

Set forth below precise, complete statement of relief sought:

Defendant-Appellant Nicholas Turnquist seeks an

order vacating the District Court's Orders of Detention,

dated September 30, 2021 and March 29, 2022, and

setting reasonable conditions of release pending trial

pursuant to 18 U.S.C. § 3142.

_____

United States v. Turnquist

**MOVING PARTY:** Defendant-Appellant Nicholas Turnquist   **OPPOSING PARTY:** Plaintiff-Appellee United States of America

☐ Plaintiff          ☑ Defendant

☐ Appellant/Petitioner     ☐ Appellee/Respondent

**MOVING ATTORNEY:** Robert C. Singer, Esq          **OPPOSING ATTORNEY:** AUSA Monica Richards

[name of attorney, with firm, address, phone number and e-mail]

Singer Legal PLLC                    U.S. Attorney's Office - WDNY

80 E Spring Street, Williamsville, NY 14221      138 Delaware Avenue, Buffalo, NY 14202

rob@singerlegalpllc.com  (716) 222-3288       monica.richards@usdoj.gov  (716) 843-5700

Court- Judge/ Agency appealed from: Hon. John L. Sinatra, Jr. (WDNY)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____
_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____
_____
_____
_____

Is oral argument on motion requested?  ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No  If yes, enter date: **(Note: Argument was scheduled for 3/16/22, but canceled following a superseding indictment)**

**Signature of Moving Attorney:**

_____ **Date:** 4/27/22 \_\_\_\_ Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

                Plaintiff-Appellee,

v.                                        Nos. 21-2563 & 22-757

NICHOLAS TURNQUIST,

                Defendant-Appellant.

---

## DEFENDANT-APPELLANT NICHOLAS TURNQUIST'S MOTION FOR PRETRIAL RELEASE

        For the reasons set forth in the accompanying memorandum of law, dated April 27, 2022, Defendant-Appellant Nicholas Turnquist, hereby moves for an order vacating the District Court's Orders of Detention, dated September 30, 2021 and March 29, 2022, and an order setting reasonable conditions of pretrial release pursuant to Fed. R. App. Proc. 9(a) and 18 U.S.C. § 3142.


Dated:     April 27, 2022
           Williamsville, New York

                          **SINGER LEGAL PLLC**
                          *Attorneys for Defendant-Appellant Nicholas Turnquist*

                          By:s/ Robert C. Singer, Esq.
                              Robert C. Singer, Esq.
                          80 East Spring Street
                          Williamsville, New York 14221
                          (716) 222-3288
                          rob@singerlegalpllc.com

**TO:** **United States Attorney's Office**
**for the Western District of New York**
*Counsel for Plaintiff-Appellee United States of America*
Tiffany H. Lee, Esq.
Monica Richards, Esq.
138 Delaware Avenue
Buffalo, New York  14202
(716) 843-5700
Tiffany.Lee@usdoj.gov
Moica.Richards@usdoj.gov

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————————

UNITED STATES OF AMERICA,

                     Plaintiff-Appellee,

v.

NICHOLAS TURNQUIST,

                  Defendant-Appellant.

———————————————————

**MEMORANDUM IN SUPPORT**

Nos. 21-2563 & 22-757

## INTRODUCTION

On March 16, 2022, this Court was scheduled to hear oral argument regarding Defendant-Appellant Nicholas Turnquist's appeal from the September 30, 2021 order of District Judge John L. Sinatra, Jr., ordering him detained pending trial because of the alleged danger his release will pose to the community/alleged victim in this case. Less than a week before oral argument, Plaintiff-Appellee United States of America obtained a superseding indictment, Joint Appendix at 423-26[1], charging Mr. Turnquist with additional crimes that the government discussed at the previous detention hearing in September 2021 and has known about since November 2020. Fearing that all of the work this Court and appellate counsel had done would become moot, the parties moved to hold Appeal No. 21-2563 in abeyance until a detention

---

[1] Hereinafter, citations to the Joint Appendix will be referenced as "A.__."

1

hearing on the superseding indictment could be held. This Court granted that motion and cancelled oral argument. A.427.

On March 29, 2022, the District Court held a detention hearing on the superseding indictment. A.428-47. The government moved for detention. A.430-37;445. Mr. Turnquist argued for release on conditions. A.437-44. Following argument, the District Court ordered Mr. Turnquist detained for the same reasons as before, believing the case for detention was "stronger" in the wake of the superseding indictment. A.445-46. Mr. Turnquist timely appealed, A.448, and moved to consolidate his appeals of the September 30, 2021 order (Appeal No. 21-2563) and the March 29, 2022 order (Appel No. 22-757). A.450-59.

As set forth in greater detail below, Mr. Turnquist believes that the District Court, once again, committed clear error in ordering detention. Three other judges and the Probation Office concluded that release was appropriate. Mr. Turnquist rebutted the presumption that he was a danger by demonstrating that he has none of the traditional "red flags" associated with detention. And Mr. Turnquist introduced evidence which calls into question the strength of the government's case, notwithstanding the superseding indictment. At the March 29, 2022 detention hearing, the government failed to prove that Mr. Turnquist was a danger and that his detention was warranted under the Bail Reform Act. Moreover, the District Court's most recent decision on detention suffers from the same flaws as

before – it is brief and it lacks any substantive analysis and reasoning explaining why the presumption of detention was not rebutted and the conditions proposed by Mr. Turnquist, the Probation Officer, and Magistrate McCarthy are inadequate. This is why the District Court erred in ordering detention. And this decision continues to interfere with Mr. Turnquist's liberty and his ability to prepare for a complex trial. This Court should vacate the District Court's order and release Mr. Turnquist on conditions.

## JURISDICTIONAL STATEMENT

Mr. Turnquist appeals from an interlocutory order denying his pretrial release entered on September 30, 2021 and March 29, 2022, in United States District Court for the Western District of New York, before the Honorable John L. Sinatra, Jr., United States District Judge. Counsel for Mr. Turnquist filed timely notices of interlocutory appeal on October 11, 2021 and April 5, 2022. The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3142 and 3231. The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291.

## STATEMENT OF THE CASE & FACTS

Prior to the filing of the superseding indictment, the parties comprehensively briefed this Court regarding the facts and procedural history of this case and the first detention decision. *See* No. 21-2563, ECF 23 (Appellant's Brief); ECF 24 (Joint Appendix Vol. I); ECF 25 (Joint Appendix Vol. II); ECF 26 (Special

3

Appendix); ECF 26 (Sealed Confidential Joint Appendix); ECF 34 (Appellee's Brief);

ECF 46 (Appellant's Reply Brief).  Given this Court's familiarity with those

documents, these documents and arguments are hereby incorporated by reference.

The sections below update the Court on new procedural events and facts only.

### A. The March 8, 2022 Superseding Indictment.

The government superseded the indictment in this case on March 8,

2022.  The superseding indictment alleges that Mr. Turnquist committed five

violations of 18 U.S.C. § 2423(a)&(e). (Transporting or Attempting to Transport a

Minor Across State Line to Engage in Sexual Activity).  A.423-26.  The superseding

indictment contains the offense previously alleged in the sole count of the original

indictment that occurred in Erie, Pennsylvania on or about December 23-24, 2014.

A. (Count 3).  The superseding indictment also contains four additional counts for

trips allegedly taken in 2014-15 to Maryland, Pennsylvania, Canada, and Florida

wherein Mr. Turnquist is alleged to have had sexual intercourse with the alleged

victim, Ms. Kranz.  A.423-26.

### B. The March 29, 2022 Detention Hearing.

Following arraignment on the superseding indictment, Mr. Turnquist

entered pleas of not guilty and the government moved for detention.  A.419-20.  On

March 29, 2022, the District Court held a detention hearing.  A.420-21.  The parties

proceeded by proffer.  The government moved for detention on "largely the same

grounds" as in September 2021. A.430. First, the government noted that this case is subject to the "rebuttable presumption" under 18 U.S.C. § 3142(e)(3)(E). A.431. Second, the government argued that the factors under 18 U.S.C. § 3142(g) favor detention. The government noted that the crimes alleged in the superseding indictment are "very serious . . . crime[s] of violence involving a minor" for which a conviction carries a mandatory minimum punishment of ten years imprisonment and a maximum term of life. *Id.* The government argued that the evidence is "strong and compelling" and noted how each trip alleged in the indictment is corroborated by bank, credit card, and/or business records. A.430-31. The government also referenced that same evidence it mentioned in September 2021: the 2020 jail call in which Mr. Turnquist asks his wife to look up the age of consent in Pennsylvania, Ohio, Maryland, South Carolina, Florida, and Canada (A.434); the observation of one of Mr. Turnquist's other minor daughters (M.T.) during the Erie, PA trip where she saw Ms. Kranz on top of Mr. Turnquist with her legs spread over him in bed (A.435); Mr. Turnquist's admission to police in April 2020 that he engaged in a consensual sexual relationship with Ms. Kranz when she was 17-18 years old (A.435); and, the controlled call in which the government believes that Mr. Turnquist made admissions regarding under-age sex with Ms. Kranz (A.436).

Third, the government argued that Ms. Kranz's testimony regarding Mr. Turnquist's alleged physical and sexual abuse of her as well as the threats he

allegedly made to her, her mother, her grandmother, and her sisters demonstrated a character for and history of violence. A.436-37. Fourth, the government argued that Mr. Turnquist's release poses a danger to the "community, especially to children," in general, and to "his biological daughters," in particular. A.437. Fifth, the government argued that Mr. Turnquist poses a risk of flight "given the strong evidence against him and given the potential sentence." A.437.

Mr. Turnquist opposed the government's motion. First, the defense noted that the Probation Department's position in favor of release did not change in the wake of the superseding indictment and that Probation continued to recommend Mr. Turnquist's release on the conditions it recommended because such conditions reasonably assured safety and appearance. A.437; *see also* Confidential Joint Appendix at 1-7 (Bail Report).[2] Second, the defense argued that the new allegations in the superseding indictment "do not make this case any stronger or more compelling" because the only evidence corroborating the allegations are billing records for trips that were not in dispute. A.437-38. Importantly, the defense noted how all of the previous papers demonstrated that Ms. Kranz not just had a motive to lie, but did lie under oath in the past about a previous sexual assault allegation as well as the fact of the instant case when it was tried in Wyoming County, NY. A.438. Third, the

---

[2] Hereinafter, citations to the Joint Confidential Appendix will be referenced as "CA.___."

defense argued that the controlled call did not just contain admissions; rather, it contained multiple denials by Mr. Turnquist of the allegations made by Ms. Kranz regarding underage sex.  A.438-39.

Fourth, Mr. Turnquist noted that he provided a substantial bail package which included a surety and the package still stands.  A.439; CA.8-26.  The defense noted that Mr. Turnquist also was amenable to the conditions proposed by Probation and Magistrate McCarthy and, if inadequate, he also was willing to agree to more restrictive conditions that would bar contact between himself and any minors – to include not having contact his own children and his wife's children or not being permitted to stay in his marital residence – if that was required for his release.  A.439-41.  Fifth, the defense updated the District Court on the status of two criminal cases that were pending against Carly Turnquist in September 2021.  As noted, the witness tampering felony involving Ms. Kranz was reduced and disposed of via a plea to a non-criminal violation and the felony DWI offense involved prescription medication, not illegal narcotics or alcohol, and was on track to get resolved through a diversion program.  A.439-41.

Sixth, the defense conceded that the charged offenses were "serious . . .on paper," however the defense also noted that it had made a "substantial showing" in September 2021 how the alleged victim's account suffered from inconsistencies and inaccuracies and, as a result, the government's case was not "a

7

slam-dunk." A.441. Seventh, the defense addressed the "rebuttable presumption" and argued that the evidence it introduced in September 2021 as well as at the March 2022 hearing demonstrated that Mr. Turnquist was "a law-abiding citizen, who does not have a criminal record[,] does not have a[n] alcohol or drug problem[, and] does not have the classic flags" that traditionally concern courts regarding flight and dangerousness. A.441-42;444. Eighth, the defense challenged the government's belief that release posed a danger to Ms. Kranz, Mr. Turnquist's minor biological and step-children, and persons in the community. As the defense noted, the government presented no evidence that Mr. Turnquist had engaged in this type of misconduct with any other children and, when investigated, all of his children denied such abuse. A.442-43. And the only evidence it presented vis-à-vis Ms. Kranz was her own testimony which was uncorroborated and, as demonstrated in Wyoming County, contained falsehoods. *See id.* Finally, the defense noted how if the Court believed that these concerns about danger were warranted, then the proper response was to craft conditions rather than to imprison Mr. Turnquist. This is especially true given the complex nature of his case and the limitations that being in prison placed on his ability to prepare for trial given COVID-19 restrictions. A.443-44.

   In rebuttal, the government argued that the case is stronger because the superseding indictment charges multiple instances of transporting a minor. A.445. The government also noted how the jail call about the age of consent in different

states tracks the trips charged in the indictment and Mr. Turnquist acknowledged

having sex with Ms. Kranz when she was 17 years old which also tracks the

allegations.  A.445.

### C. The District Court orders detention again.

Following oral argument, the District Court granted the government's

motion on dangerousness grounds.  The decision comprises less than one page in the

record.  The District Court opined that Mr. Turnquist had not "introduced evidence

sufficient to rebut the presumption that no condition or combination of conditions

will reasonably assure the safety of the community if he were released pending trial."

A.445.  The District Court also opined that "the government had proven by clear and

convincing evidence that no condition or combination of conditions will reasonably

assure the safety of any other person in the community."  A.445-46.  The District

Court noted that it had considered all of the Section 3142(g) factors in reaching this

decision.  A.446.  Rather than elaborating any further on its basis in reaching these

conclusions, the District Court stated that it relied "on the reasons previously stated

the last time, September 30, 2021, which is Docket 53 . . . [a]nd, if anything, in my

judgment, the case for detention is stronger, so I'm granting the Government's

motion and Mr. Turnquist will remain detained pending trial."  *Id.*

Similar to last time, the District Court did not address Mr. Turnquist's

surety package or explain why the conditions of release proposed by the defense, the

Probation Department, or Magistrate McCarthy were inadequate. The District Court also did not comment on why Mr. Turnquist's positive history and characteristics were inadequate to warrant his release on conditions, explain why COVID-19 restrictions at the jail did not warrant pretrial release, and did not explain how Mr. Turnquist failed to meet his burden of production to overcome the "rebuttable presumption." No finding was made regarding risk of flight.

## LEGAL STANDARDS

### A. Legal standard governing pretrial detention/release.

Federal law contemplates that "only a limited group of offenders [] should be denied bail pending trial." *United States v. Sabhnani*, 493 F.3d 63, 74-75 (2d Cir. 2007) (citations and quotations omitted). Thus, under the Bail Reform Act, a district court is instructed to order the pre-trial detention of a defendant only if the judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1).

For certain crimes – such as the one charged in this case – there is a presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community." *See* 18 U.S.C. § 3142(e)(3). "This presumption may be rebutted by the defendant, who 'bears a limited burden of production . . . by coming forward with evidence that he does not pose a danger to the community.'" *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020) (quoting *United States v.*

10

*Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).  Importantly, "the burden on the defendant[] is one of production, *not* persuasion."  *Mattis*, 963 F.3d at 292 (emphasis in original).  "Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court . . .  [and] the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community.'"  *Id.* at 290-91; *Mercedes*, 254 F.3d at 436.

When determining whether a defendant poses a danger to the community, the district court must consider the following factors:

> (1) the nature and the circumstances of the offense charged. . .;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including [his] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
> (4) the nature and seriousness of the danger to any person or to the community that would be posed by the person's release.

*See* 18 U.S.C. § 3142(g); *see also Mattis*, 963 F.3d at 291 (citing *Mercedes*, 254 F.3d at 436 ("To determine whether the presumption[] of dangerousness . . . [is] rebutted, the district court considers" the above factors.)).

The facts the judicial officer uses to support a finding pursuant to

11

Section 3142(e)(1) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. *See* 18 U.S.C. § 3142(f)(2). "Clear and convincing evidence" means "something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). In other words, the evidence must support a conclusion of danger to the community "with a high degree of certainty." *Id.*; *see also Chimurenga*, 760 F.2d at 403 (holding that when there is "a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate.") (citation omitted). And if the court issues a detention order under § 3142(e)(1), "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention . . . ." 18 U.S.C § 3142(i)(1); *Cf. United States v. English*, 629 F.3d 311, 321 (2d Cir. 2011) (permitting a transcript to serve as the order so long as reasoning is clearly set out in the transcript).

## B. Legal standard governing appeals of detention orders.

The Court of Appeals applies a "deferential review to a district court's [bail determination] and will not reverse except for clear error." *Mattis*, 963 F.3d at 291 (citing *Sabhnani*, 493 F.3d at 75; *United States v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000) ("We review the district court's determination that a package of bail

conditions will prevent danger to the community for clear error.")).  "The clear error standard applies not only to the factual predicates underlying the district court's decision, but 'also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release.'"  *Id.* (quoting *United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004)).  While "the clearly erroneous standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently," *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985), this Court has cautioned that "a bail determination, which involves mixed questions of law and fact, may not be an obvious case in which to apply the traditional 'clear error' framework cited in *Anderson*," *Mattis*, 963 F.3d at 301 n.2.  The Court of Appeals will find clear error only where, "on the entire evidence[, it is] left with the definite and firm conviction that a mistake has been committed." *Mattis*, 963 F.3d at 291 (quoting *Sabhnani*, 493 F.3d at 75 (quotation marks omitted)).  However, "the court's ultimate finding may be subject to plenary review if it rests on a predicate finding which reflects a misperception of a legal rule applicable to the particular factor involved."  *United States v. Shakur*, 817 F.2d 189, 197 (2d Cir. 1987).

## ARGUMENT

**I.    The District Court clearly erred when it detained Mr. Turnquist pending trial.  Mr. Turnquist rebutted the presumption of dangerousness, the government did not prove dangerousness, and the proposed conditions of release reasonably assured the safety of Ms. Kranz and the community.**

In the proceedings below, the government argued for detention on the basis that Mr. Turnquist was both and danger and a flight risk.  A.430-37.  The District Court detained Mr. Turnquist on that basis alone.  A.445-46.  Consequently, the reason why Mr. Turnquist remains detained is his perceived dangerousness.

The District Court's conclusions that Mr. Turnquist had not rebutted the presumption of dangerousness and that the government had proven dangerousness was clearly erroneous.  Mr. Turnquist rebutted the presumption and the government failed to prove dangerousness by clear and convincing evidence.  On top of that, the conditions of release proposed by Mr. Turnquist and the Probation Office were adequate to ensure safety.  The Court also failed to address the preparation concerns voiced by the defense.  This Court should reverse this erroneous finding and release Mr. Turnquist forthwith.

### A. The presumption of dangerousness was rebutted.  The District Court's conclusion to the contrary is not supported by the record.  The District Court continues to apply an incorrect (and heightened) legal standard.

The District Court continues to err by holding Mr. Turnquist to a different (and higher) standard than that required under the law.  Case law makes clear

14

that in the context of a detention hearing **the defendant bears a "limited burden" of *production – not persuasion –*** to show that he is not so dangerous that *no conditions* will ensure the safety of the community if he is released. *See Mattis*, 963 F.3d at 290; *Mercedes*, 254 F.3d at 436; *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce *some evidence* contrary to the presumed fact in order to rebut the presumption.") (emphasis added).

In these proceedings, Mr. Turnquist produced "some evidence" to rebut the presumption: his motions for release (A.24-41, A.144-150; A.272-78, A.286-88), his first response to the govrnment's appeal of Magistrate McCarthy's release order (A.358-70), counsel's remarks at oral argument (A.291-96, A.300-04, A.313-19, A.388-98, A.400-402, A.437-44), and a multitude of exhibits (A.42-102, A.151-271; CA.8-24; A.371-72) that attacked the core of the government's allegations against him as well as the credibility of his accusers, principally Ms. Kranz, who is inconsistent with her recollection of events, denies facts under oath that are supported by irrefutable evidence, *see* No. 21-2563 ECF 46 at 4-7, and possesses strong motives to fabricate the allegations[3].

---

[3] *See, e.g.,* A.38.

> ...s. Leah Kranz with their father Nick at 4377 Reading Road in West Falls, N.Y. and his current wife - Carley.  Miranda stated she decided to disclose what Nick had done to her over concerns with her sisters still living with him and from getting a CPS call made on her over allowing her daughter to be watched by her mother and a complaint to the dog warden regarding her dog with the possibility of Nick being involved with them.  Miranda is aware that Nick is allowing Riley to date and sleep with a 16 year old girl names "Lila" possible last name "Ferrel ?" who is from Silver Creek, N.Y. Riley also has (2) face book accounts and Nick never allowed her to have any.  Miranda's mother knows about everything now and all of Nick's family knows that he was having sex with her but only told them that it was when she turned 18 and on -no one knows that is started when she was 12 years old.  Miranda states that his current wife Carly was doing sex things to...

In addition to this affirmative evidence, Mr. Turnquist submitted to a bail interview with the Probation Office, who recommended release on conditions. CA.1-7. Mr. Turnquist referenced the Probation Office's report in his written submissions and at oral argument. A.430. Not only did this evidence cast doubt on the strength and truth of the allegations levied against Mr. Turnquist by Ms. Kranz, but this evidence and the **_verified facts in the bail report_** showed why Mr. Turnquist was not so dangerous that conditions would be totally inadequate to ensure safety. Specifically, the evidence proved that Mr. Turnquist:

- did not have a criminal record;
- did not have any record of committing similar offenses against other minors;
- did not have any other allegations of sexual misconduct or other criminal conduct levied against him by another minor;
- did not have any record or allegations against him involving a violent offense other than the uncorroborated allegations levied by Ms. Kranz;
- did not have a history of intimidating witnesses;
- did not have a history of disregarding court orders;
- had a history of abiding by court-imposed orders of protection since his arrest in April 2020;
- had a history of employment in civil-service, first-responder-type jobs which required him to abide by directives of civil authorities;
- had a history of cooperation with law enforcement, to include this case; and
- had a track-record of holding respect for the law throughout his life.

All of these submissions and arguments constituted "some evidence contrary to the presumed fact" of dangerousness. _See Rodriguez_, 950 F.2d at 88. Furthermore, the

evidence presented was not just proffered statements of an attorney; instead, **the evidence constituted transcripts, documents, sworn statements, videos, and a verified bail report that corroborated all of the arguments made by counsel**.

Simply put, the District Court's conclusion that the defense failed to present "some evidence" to rebut the presumption finds no support in the record. Moreover, both of the District Court's decisions on this point fail to explain how and why the District Court even reached this conclusion; instead, both opinions just say that in conclusory fashion. This should lead to a "definite and firm conviction that a mistake [was] committed." *Mattis*, 963 F.3d at 29. Because the District Court misapplied the law, its legal conclusion regarding the rebuttable presumption was clearly erroneous and should be vacated.

**B. The District Court's conclusion that dangerousness was proven by clear and convincing evidence and that no conditions will reasonably address those concerns was clearly erroneous. And just like the September 30, 2021 order, the March 29, 2022 order provides little insight into the District Court's rationale for detention.**

Unlike three other judges who have explained their decisions to grant Mr. Turnquist bail, the District Court continues to detain Mr. Turnquist without offering more than a brief, conclusory statement. This is problematic because the District Court does not explain *why* the government met is burden of proof for dangerousness and *why* the conditions proposed by Mr. Turnquist and Probation *are inadequate*. Instead, the District Court appears to remain fixated on the first two

factors of 18 U.S.C. § 3142(g) – the nature and circumstances of the offense and the weight of the evidence– to the exclusion of the other (more important) factors. As Mr. Turnquist argued in Appeal No. 21-2563 and as further set forth below, doing so is clearly erroneous. This Court should correct this mistake by vacating the decision below and releasing Mr. Turnquist on conditions.

### 1. The District Court continues to place too much weight on nature of the offense and weight of the evidence prongs.

Mr. Turnquist made argument on this point in his previous brief and reply, *see* Appeal No. 21-2563 ECF 23 (Appellant's Brief) at 45-48; ECF 46 (Reply Brief) at 8-9, and those arguments are hereby incorporated by reference. The District Court's decision to overly-rely on these factors again is clearly erroneous because Mr. Turnquist is vested with the presumption of innocence, *see* 18 U.S.C. § 3142(j), and, generally, the weight of the evidence is the least important of the 3142(g) factors, *see, e.g., United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969); *accord Motamedi*, 767 F.2d at 1408; *United States v. Mendez*, No. 19-CR-00245-EAW, 2020 U.S. Dist. LEXIS 105823, at *12 (W.D.N.Y. June 17, 2020).

Furthermore, while the District Court did not reduce its reasons for detention into writing and the only thing available to discern the District Court's rationale is a one-page transcript, A.445-446, the transcript demonstrates that too much reliance on the first two prongs of 3142(g) is exactly what happened. For example, at the end of its brief order, the District Court proclaims "[e]verything here

today that bears on the issues in 3142(g). And, if anything, in my judgment, the case for detention is stronger . . . ." A.446. This statement proves that, when detaining Mr. Turnquist, the District Court simply relied upon the fact that a new indictment was filed, with more charges, to justify its conclusion. This is clearly erroneous because this belief neither takes into account Mr. Turnquist's substantial attacks on the government's proof and the lack of corroboration of Ms. Kranz accusations nor explains why Mr. Turnquist will commit additional crimes if released. These considerations are important to the analysis, *see, e.g., United States v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987); *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (Kennedy, J.), but the District Court did not factor them into its analysis. This should leave this Court with a "definite and firm conviction that a mistake [was] committed." *Mattis*, 963 F.3d at 291.

> **2. The District Court does not explain why Mr. Turnquist's history and characteristics and the proposed conditions are inadequate to assure safety. This deficiency demonstrates why the District Court clearly erred in detaining Mr. Turnquist.**

Mr. Turnquist made argument on this point in his previous brief, *see* Appeal No. 21-2563 ECF 23 (Appellant's Brief) at 48-54, and those arguments are hereby incorporated by reference. Like before, the District Court's most-recent decision does not explain why Mr. Turnquist does not prevail on the third and fourth prongs and, if not, why. This is a serious deficiency that should cause this Court to question the District Court's order. Regarding history and characteristics, it is

*undisputed* that Mr. Turnquist does not have a criminal history; suffers from a

substance abuse problem, lack of employment, and community ties; or, has

supervision violations or some of the other typical "red flags," *see, e.g.,* ECF 42 at 49

n.9, that cause courts to detain defendants.

Regarding dangerousness, this time around, the government did not

argue that Mr. Turnquist would engage in witness tampering and other misconduct

because his wife, Carly Turnquist, allegedly did so. A.383-85. And the defense

addressed how many of the concerns voiced in September 2021 regarding Carly

Turnquist were overstated and irrelevant because new evidence demonstrated that the

concerns were overblown and those concerns could be mitigated by having

Mr. Turnquist stay with someone else. A.439-44. The defense also raised, as it did in

September 2021, how the government's concern about Mr. Turnquist engaging in this

type of conduct with other minor members of his family or children in the

community also was a red herring because the government never marshalled *any*

*evidence* to prove these contentions. A.443. Finally, the defense challenged the

government's contention that Mr. Turnquist presented a danger to Ms. Kranz, noting

how the government did not introduce evidence of any acts of recent witness

intimidation or threats, how Ms. Kranz past allegations were uncorroborated, and

how Mr. Turnquist did not demonstrate behavior indicating he could not comply with

conditions designed to protect Ms. Kranz. A.442-44. This is why it is difficult to

understand how the District Court concluded that the government proved dangerousness "with a high degree of certainty." *Chimurenga*, 760 F.2d at 405.

Under the Bail Reform Act, detention is a matter of last resort and a district court is required to impose *the least restrictive conditions* possible that will *reasonably* assure the defendant's appearance and the safety of the public. *See* 18 U.S.C. § 3142(c)(1)(B). Home detention, orders of protection, digital device restrictions, living arrangements, electronic monitoring, and probation supervision are some of many conditions that were/could be imposed to mitigate the risk of danger in this case. This is particularly true in a case where a defendant does not have a history of criminal activity, failure to abide by court orders, or making recent and verified threats against a victim/witness – all of which, when present, are facts courts have concluded would make such conditions inadequate. Here, the District Court did not even attempt to impose those conditions or explain why they were inadequate. Not only should this leave this Court with a "definite and firm conviction that a mistake [was] committed," *Mattis*, 963 F.3d at 291, but it also should lead this Court to conclude that the District Court's conclusion on this prong was clearly erroneous.

**C. The District Court failed to address Mr. Turnquist's concern that his ability to prepare for trial was hampered by his continued incarceration.**

Like before, Mr. Turnquist asked for release on conditions because COVID-19 lockdowns and preparing for a complex trial behind a sheet of glass hampers Mr. Turnquist's ability to prepare for trial. A.443; A.369. Rather than set reasonable conditions of release, the District Court stated in a text order that "Turnquist be afforded reasonable opportunity for private consultation with counsel of the local jail within which he was housed." A.421. This singular sentence is inadequate and does not explain why the proposed conditions of release cannot assure safety. Once again, this Court should find clear error and vacate the order of detention. There are conditions that will permit Mr. Turnquist to prepare for trial outside of prison and keep everyone safe.

## CONCLUSION

The Bail Reform Act does not require conditions, financial or otherwise, that *guarantee* appearance or *remove all risk* of danger. *United States v. Albannaa*, No. 12-CR-174S, 2013 U.S. Dist. LEXIS 135618, at *9 (W.D.N.Y. Sep. 23, 2013). Yet, this was the standard used by the District Court to justify its detention of Mr. Turnquist. The District Court's failure to explain otherwise is telling. It also is unfair and

erroneous.  This Court should vacate the District Court's detention order and order

Mr. Turnquist released on conditions.

Dated:  April 27, 2022
        Williamsville, New York

**SINGER LEGAL PLLC**

By:＿＿s/ Robert C. Singer, Esq.＿＿＿
        Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York 14221
(716) 222-3288
rob@singerlegalpllc.com

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the length restrictions in Fed. R. App. P. 27(d)(2)(A) because it contains 5,186 words, including headings, footnotes and quotations, but excluding the parts exempted by Fed. R. App. P. 32(f). This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionately spaced typeface using Microsoft Word 2010 and in 14-point Garamond font.

Dated: April 27, 2022
        Williamsville, New York

**SINGER LEGAL PLLC**

By:____s/ Robert C. Singer, Esq._____
        Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York 14221
(716) 222-3288
rob@singerlegalpllc.com

24